Charles Holmes, Jr., No. AL0671
California State Prison, Sacramento
P.O. Box 290066
Represa, California 95671

In propria persona



FILED
CLERK U.S. DISTRICT COURT

MAR 2 9 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

IN THE UNITED STATED DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES HOLMES JR, <br>           Petitioner, <br> vs. <br> Jeff Macomber, (Warden (A)), et. al. ; <br> California State Prison, Sacramento <br>           Respondents. | Case No.: CV16-00311 *MWF-KS* <br><br> AMENDED WRIT OF HABEAS <br> CORPUS AND MEMORANDUM <br> OF POINTS AND AUTHORITIES <br> IN SUPPORT OF PETITION FOR <br> WRIT OF HABEAS CORPUS AND <br> REQUEST FOR ORDER TO SHOW <br> CAUSE |

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner CHARLES HOLMES JR,   alleges:

### A. Information about Conviction and Sentence

1. Petitioner is challenging the following sentence:

The Judgement of the California Superior Court for the County of Los

Angeles; in Case No.TA115993;entered on May 26, 2011, for a total term of

-1-

125years - life (a term of 75 years for (Cal. Penal Code § 187) a consecutive 25 years to life for (Cal. Penal Code § 136.1(a)(1)) and a consecutive 25 years to life for (Cal. Penal Code §186.22(b)(1)(c)); with additional convictions of Cal. Penal Code §12022.53(d); and Cal. Penal Code §667(b)-(1).)

2. Petitioner was given this sentence for the following crimes:

California Penal Code § 187; California Penal Code §136.1 (a)(1); California Penal Code §186.22(b)(1)(c); California Penal Code §12022.53(d); and, California Penal Code §667(b)-(1).

3. Petitioner was arraigned and had a preliminary hearing.

4. Petitioner had a jury trial.

5. Petitioner had had private counsel for his trial and court-appointed attorneys at all proceedings throughout his appeals.

6. Petitioner appealed his conviction in a timely manner

(a) to the California Court of Appeal, from the judgement conviction, Case No. B239704, which, on May 24, 2013, affirmed the judgment by the Opinion.

(b) in connection with appeal No. B239704, petitioner filed a Petition for Review with the California Supreme Court of Appeal summarily denied on August 28, 2013.

(c) in connection with appeal No. B239704, petitioner filed a Petition for Writ of Habeas Corpus of Appeal summarily denied on December 23, 2014, without issuing an order to show cause or a written opinion or statement of reasons, by the Order, a copy of which is attached hereto as Exhibit A;

(d) to the California Court of Appeal, Second Appellate District, Division Three, Case No. B263838 which, on July 6, 2015, affirmed the judgment by the Opinion, a copy of which is attached hereto as Exhibit B;

(e) petitioner thereupon filed, a Petition for Review by the California Supreme Court, No S228737 were the same as those he is raising in this petition, on denied on November 24, 2015.

7.    (a) Petitioner has previously filed a petition for post-conviction relief except those mention in paragraph 6 and the previously filled a Petition for Writ of Habeas Corpus CV16-00311 MWF (VS) that petitioner wishes to amend with this petition.

(b) No other petition, appeal, or other post-conviction proceeding is now pending in any court.

8. Petitioner is now confined and restrained of his liberty by the Secretary of the California Department of Corrections and Rehabilitation and the Warden of California State Prison Sacramento, State Prison, Represa, California.

## B. Grounds for Relief

Petitioner alleges here only the general nature of the grounds for relief. He is attaching hereto a Memorandum of Points and Authorities in which he gives a more complete statement of the supporting facts and some legal authority, and incorporates the Memorandum herein by reference.

A. Trial Counsel Has a Pattern of Misconduct

B. Petitioner's Trial Counsel Did Not Use Any Experts

C. Trial Counsel Did Not Have a Trauma Expert Appointed

D. Trial Counsel Did Not Have a Medical Expert Appointed

E. Trial Counsel Did Not Have a DNA Expert Appointed

F. Trial Counsel Did Not Have a Crash Reconstruction Expert Appointed

G. Trial Counsel Did Not Appoint a Gunshot Residue Expert

H. Trial Counsel Did Not Have a Gang Expert Appointed

I. Trial Counsel Did Not Adequately Utilize the Court Appointed Investigator

J. Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Investigate Alibi Witnesses

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

K. Trial Counsel's Failure to Fully Investigate Potential Witnesses Denied Petitioner Adequate Assistance of Counsel

L. Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Object to Prosecutorial Misconduct and by Failing to Obtain and Review Material Evidence

M. Trial Counsel Allowed the Prosecutor to Keep Out Material Evidence Without Objection

N. Petitioner's Counsel Allowed the Destruction of Material Evidence Without Repercussion and Did Not Test Other Material Evidence

O. Petitioner's Counsel Unconstitutionally Objected to the Use of the a Lesser Included Offence

P. Petitioner Appears to Have a Viable Chance of at Least a Better Outcome

Petitioner incorporated herein the following Declaration, Memorandum of Points and Authorities, and Exhibits and all the documents and records on file in People v. Charles Holmes Jr. County No. TA115993 and on appeal to the Court of Appeal in No.B263838 and in his Petition for Writ of Habeas Corpus.

WHEREFORE, petitioner prays:

1. That a Writ of Habeas Corpus issues out of this Court;

2. That the respondent be ordered to show cause why petitioner is not entitled to the relief sought;

3. That an evidentiary hearing be held to examine all the records and proceedings in this case and to inquire into the cause and justification for the restrains on petitioner's liberty caused by the judgment and sentence in No. TA115993.

4. That the judgment and sentence be vacated;

5. That judicial notice be taken of all the documents and records on file in Nos. TA115993, B239704, and S228737.

6. That such other and further relief as to the Court seems just be granted.

Dated: _3/18/16_

CHARLES HOLMES, JR.
Petitioner

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                              9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS                                              12

STATEMENT OF THE FACTS                                                                12

ARGUMENT                                                                                       13

    I. PETITIONER MAY AMEND HIS WRIT OF HABEAS CORPUS        13

    II. PETITIONER SEEKS RELIEF THROUGH WRIT OF HABEAS CORPUS

    UNDER 28 U.S.C. § 2254 BY CHALLENGING THE VALIDITY OF HIS

    CONVICTION.                                                                           13

    III.   PETITIONER   WAS   DENIED   EFFECTIVE   ASSISTANCE   OF

    COUNSEL   IN   VIOLATION   OF   THE   SIXTH   AND   FOURTEENTH

    AMENDMENT                                                                             14

        A. Trial Counsel Has a Pattern of Misconduct                       17

        B. Petitioner's Trial Counsel Did Not Use Any Experts           18

        C. Trial Counsel Did Not Have a Trauma Expert Appointed      20

        D. Trial Counsel Did Not Have a Medical Expert Appointed     22

        E. Trial Counsel Did Not Have a DNA Expert Appointed          23

        F. Trial Counsel Did Not Have a Crash Reconstruction Expert Appointed

                                                                                               24

G. Trial Counsel Did Not Appoint a Gunshot Residue Expert     26

H. Trial Counsel Did Not Have a Gang Expert Appointed     27

I. Trial Counsel Did Not Adequately Utilize the Court Appointed Investigator     29

J. Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Investigate Alibi Witnesses     31

K. Trial Counsel's Failure to Fully Investigate Potential Witnesses Denied Petitioner Adequate Assistance of Counsel     34

L. Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Object to Prosecutorial Misconduct and by Failing to Obtain and Review Material Evidence     37

M. Trial Counsel Allowed the Prosecutor to Keep Out Material Evidence Without Objection     44

N. Petitioner's Counsel Allowed the Destruction of Material Evidence Without Repercussion and Did Not Test Other Material Evidence     45

O. Petitioner's Counsel Unconstitutionally Objected to the Use of a Lesser Included Offence     47

P. Petitioner Appears to Have a Viable Chance of at Least a Better Outcome     52

CONCLUSION     54

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

# TABLE OF AUTHORITIES

## Cases

2 *LaFave & Scott, Substantive Criminal Law* (1986) §7.10, subd.(b),pp.256-262.48

*Anderson v. Justice Court* (1979) 99 Cal3rd 398, 402-403.......................................18

*Brady v. Maryland*, 527 U.S. 263, 280 (1999).............................................36, 42

*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Lee* (1987) 43 Cal.3d 666, 678................................................................48, 50

*Evitts v. Lucey* (1985) 469 U.S. 387, 395-96 [105 S.Ct. 830, 835-36; 83 L.Ed.2d 821]................................................................14

*Gideon v. Wainwright* (1963) 372 U.S. 335, 342 83 S. Ct. 792, 9L. Ed. 2d 733....15

In re Cordero (1988) 46 Cal.3d 161,180 [756 P.2d 1370; 249 Cal. Rptr. 342]. .....14

*In re Fields*, 51 Cal. 3d 1063; 1069, [800 P.2d 862; 865, 275 Cal. Rptr. 384, 38 ..14

*In re Marquez* (1992) 1 Cal.4th 584, 606. ................................................30

In re Saunders (1970) 2 Cal.3d 1033,1042 [88 Cal.Rptr. 633; 472 P.2d 921]........15

*Kimmelman v. Morrison* (1986) 477 U.S. 365, 377 [106 S.Ct 2574, 2584; 91 L.Ed.2d 305................................................................13

*Kyles v. Whitley*, 514 U.S. 419, 450-51 (1995).............................................36

*Maine v. Moulton*, (1985) 474 U. S. 159, 168-170 [106 S.Ct. 477. 88 L.Ed.2d 481] ................................................................13

*People v. Alexander* (2010) 49 Cal.4th 846, 907.......................................48

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

*People v. Barton* (1995) 12 Cal.4th 186, 194.......................................................48

*People v. Breverman*, (1998) 19 Cal.4th 142; 960 P. 2d 1094; 77 CalRptr.2d 870.46

*People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1203.......................................14

People v. Gionis (1995) 9 Cal.4th 1196, 1215; (1980) 27 Cal.3d 1, 24.) ...............15

*People v. Jackson* (2009) 45 Cal.4th 662, 668 ....... ................................................49

*People v. Lasko* (2000) 23 Cal.4th 101, 108-109....................................................48

*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839 14,

    28, 33, 45

*People v. Marsden* (1970) 2 Cal.3d 118..................................................................29

*People v. Pearson* (2013) 56 Cal.4th 393, 451......................................................48

*People v. Pope,* supra, 23 Cal.3d at 424-425...................................................15, 33

*People v. Samayoa (*1997) 15 Cal.4th 795, 841 .....................................................15

*People v. Welch* (1999) 20 Cal.4th 701, 728-729...................................................49

*People v. Worthy* (1980) 109 Cal.App 3d 514, 167 Cal.Rptr 402............................18

*Powell v. State of Ala.* (1932) 287 U.S> 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158, 84

    A.L.R. 527) ...........................................................................................15

*Puett v. Superior Court* (1979) 96 Cal.App.3d 936, 158 Cal.Rptr. 266..................18

*See In re Hall* (1981) 30 Cal.3d 408, 426......................................................28, 46

*Strickland v. Washington*, (1984) 466 U.S. 668, 686 [104 S.Ct. 2052. 80 L.Ed.2d

    674] .......................................................................................14, 15, 30

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

*Wickersham, supra,* 32 Cal.3d 307, 324, 185 Cal.Rptr. 436, 650 P.2d 311 .....46, 47

*Wiggins v. Smith* (2003) 539 U.S. 510, 537, 123 S. CT 2527, 156 L.Ed 2d. 471...16

### Rules

Federal Rules Civil Procedure Rule 15(a)................................................................12

### Federal

28 U.S.C. § 2254....................................................................................................13

*Kyles,* 514 U.S. at 433 ..........................................................................................36

*United States v. Agurs,* 427 U.S. 97, 107 (1976)....................................................36

*United States v. Bagley,* 473 U.S. 667, 676 (1985).................................................36

*United States v. Cronic,*466 U. S. 648, 653[104 S.Ct. 2039. 80 L.Ed.2d 657]..13,14

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, CHARLES HOLMES JR, offers this memorandum of points and authorities in support of his petition of writ of habeas corpus and request for order to show cause.

## STATEMENT OF THE FACTS

On or about February 25, 2010, Johnny Ray Thomas was shot in the back of the head and killed. Charles Holmes Jr. was charged. Specifically, it was alleged in Count 1 that, on or about February 25, 2010, he murdered Johnny Ray Thomas; it was alleged in Count 2, that he dissuaded a witness, and special allegations were further alleged.

This case was a gang case in which Johnny Ray Thomas was shot and killed in the early morning hours of February 25, 2010. The prosecutor theorized that the target victim was a snitch, Demond Vaughn, and when decedent Thomas refused to deliver Vaughn to Petitioner for gang vengeance, a heated argument ensued and Petitioner was alleged to have shot Thomas. He then fled in the Yukon. (10RT3609.) Petitioner's defense was that he was not the shooter, and not the driver of the vehicle that sped away from the scene of the homicide. Rather, he was at a gang intervention meeting. However, trail counsel neither investigated

appellant's alibi nor called his alibi witnesses nor called any experts to aid his defense. (See Exhibit A California Supreme Court Petition for Review (PFR) reference to 11RT 5707, 5709.)

The jury convicted Petitioner of first degree murder as charged in Count 1, dissuading a witness as charged in count 2, and found true all the special allegations. (See Exhibit A PFR referencing 2CT 448-451, 453-455; 10RT 3902-3094.) The court also found true the allegation that Petitioner suffered two prior strikes within the meaning of the three strikes law. (See Exhibit A PFR referencing 2CT 522; 11RT 5720.) The court sentenced Petitioner under the three strikes law to an aggregate term of 125 years to life. (Opn., p.2.)

## ARGUMENT

## I. PETITIONER MAY AMEND HIS WRIT OF HABEAS CORPUS

Under Federal Rules Civil Procedure Rule 15(a) Petitioners may amend their Writs of Habeas Corpus without leave of court once as a "matter of course". Herein Petitioner amends his Writ.

## II. PETITIONER SEEKS RELIEF THROUGH WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY CHALLENGING THE VALIDITY OF HIS CONVICTION.

According to 28 U.S.C. § 2254 "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (28 U.S.C. § 2254(a))

Here the Petitioner seeks relief for violations of his Fifth, Sixth, and Fourteenth Amendment Rights to the United States Constitution and Article I, Section 15 of the California Constitution.

### III. PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT

Given that the concept of "innocent until proven guilty" is so vitally important, a criminal defendant is constitutionally entitled to representation by counsel, "for it is through counsel that the accused secures his other rights" and ensures a fair trial. (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 377 [106 S.Ct 2574, 2584; 91 L.Ed.2d 305], citing *Maine v. Moulton*, (1985) 474 U. S. 159, 168-170 [106 S.Ct. 477. 88 L.Ed.2d 481]; *United States v. Cronic*, 466 U. S. 648, 653 [104 S.Ct. 2039. 80 L.Ed.2d 657].) "In other words, the right to counsel is the right to effective assistance of counsel." (Id.at 377-387, [106 S.Ct. at 2584], citing, *Evitts v. Lucey* (1985) 469 U.S. 387, 395-96 [105 S.Ct. 830, 835-36; 83 L.Ed.2d 821]; *Strickland v. Washington*, (1984) 466 U.S. 668, 686 [104 S.Ct. 2052. 80 L.Ed.2d 674]; *United States v. Cronic*, supra, 466 U.S.at 654.) Both the United

States Constitution and California Constitution also grant the accused the right to effective assistance of counsel in criminal cases. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839], citing 6th Amend.; Cal. Const., Art. I § 15.)

Habeas corpus relief is warranted where the defendant shows "(1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's defective representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings, the result would have been more favorable." (Citation) (*People v. Camilleri* (1990) 220 Cal.App.3d 1199, 1203; *Strickland,supra*, 466 US at 687, 691-694 [80 L.Ed.2d 674, 693, 696-98, 104 S.Ct. 2052, 2064, 2067-68]; Ledesma supra, 43 Cal.3d at pp. 216-218.) As such, the right to effective assistance of counsel "entitles [a defendant] to the 'reasonably competent assistance of an attorney acting as his diligent conscientious advocate.'"" (*In re Fields*, 51 Cal. 3d 1063; 1069, [800 P.2d 862; 865, 275 Cal. Rptr. 384, 38], citing In re Cordero (1988) 46 Cal.3d 161,180 [756 P.2d 1370; 249 Cal. Rptr. 342].)

Hence, "[i]f counsel's failure is crucial to a potentially meritorious defense, 'the defendant has not had the assistance to which he is entitled.'" (*People v. Pope, supra*, 23 Cal.3d at 424-425, quoting In re Saunders (1970) 2 Cal.3d 1033,1042 [88

Cal.Rptr. 633; 472 P.2d 921]..) Furthermore, scores of California cases hold that a claim of prosecutorial misconduct is waived for lack of objection. (E.g., *People v. Samayoa* (1997) 15 Cal.4th 795, 841; People v. Gionis (1995) 9 Cal.4th 1196, 1215; (1980) 27 Cal.3d 1, 24.)

The Sixth Amendment guarantees an accused "the guiding hand of counsel at every stage of the proceedings against him." (*Gideon v. Wainwright* (1963) 372 U.S. 335, 342 83 S. Ct. 792, 9L. Ed. 2d 733; quoting *Powell v. State of Ala.* (1932) 287 U.S> 45, 68-69, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527) A defendant is denied effective assistance when trial counsel performs deficiently, i.e., his performance falls below professional norms, and when that deficient performance is prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688,694.) To establish prejudice, a defendant must show that there is a **reasonable probability** that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A **reasonable probability** is a probability sufficient to undermine confidence in the outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688,694. (Emphasis added)) If "there is a reasonable probability that at least one juror would have struck a different balance," the petitioner has established prejudice. (*Wiggins v. Smith* (2003) 539 U.S. 510, 537, 123 S. CT 2527, 156 L.Ed 2d. 471)

Charles Holmes Jr. was represented at trial by Ronald White. As recognized by the

Sixth and Fourteenth Amendments of the U.S. Constitution a defendant is entitled

to the effective assistance of counsel. Mr. Holmes's ineffective assistance of

counsel claim is based upon sixteen separate grounds that individually or

cumulatively support a new trial.

## A. Trial Counsel Has a Pattern of Misconduct

Ronald White, Petitioner's trial counsel, has a pattern of misconduct and

misleading his clients. White was sanctioned and eventually disbarred by the

California State Bar. He was disciplined in 2002, he was suspended for acts of

moral turpitude including misleading his client and fabricating a false community

service letter.

On November 18, 2011, he was placed on two years of probation with a 90-

day actual suspension and he was ordered to take the MPRE within one year and

comply with rule 9.20 of the California Rules of Court. The order took effect Nov.

18, 2011. White stipulated to four counts of misconduct in two matters. He was

asked to provide a client with a file, so that a habeas corpus petition could be

pursued, but he ignored the request twice. He further asserted to bar investigators

that he did not receive the request. The investigators then produced letters and

proofs of service. White still did not release the file until after the bar intervened, and only released the file, 18 months after the original request. In the second matter in 2011, White failed to file the opening brief in a criminal appeal and the court issued a notice of default. He failed to inform the client, the default was set aside, after which he filed the opening brief. The client's sentence was modified, but White still refused to inform the client. White again failed to respond to a request for the file, but eventually gave the file to the client's mother six months later. (Exhibit C)

On January 8, 2015, Ronald White was ordered to comply with rule 9.20 of the California Rules of Court. The State Bar Court found White culpable of breaching his fiduciary duties, misappropriation, misrepresentation and failure to cooperate in a State Bar investigation.

Throughout his years of practice White has mislead his clients, failed to preform proper investigations, file necessary motions, and has shown a pattern of deceit by involving himself in acts of moral turpitude. Here, in this case, he failed to keep his duty to his client by ignoring requests for action that would have been beneficial to his client, Petitioner.

### B. Petitioner's Trial Counsel Did Not Use Any Experts

Petitioner's trail counsel did not request experts. Defendants are entitled to the right to counsel guaranteed by the Sixth Amendment to the United States

Constitution is binding upon the States. The right to counsel includes the right to appointed experts when indigency is established, (*People v. Worthy* (1980) 109 Cal.App 3d 514, 167 Cal.Rptr 402), and the need for the expert is shown (*People v. Worthy,* supra; *Mason v. Arizona* (9th Cir 1974) 504 F2d 1345; *Puett v. Superior Court* (1979) 96 Cal.App.3d 936, 158 Cal.Rptr. 266) Once indigency and need have been shown, appointment of the expert is mandatory. (*People v. Worthy, supra.*)

In this case, Petitioner was/is indigent. "Neither case law nor the Penal Code defines the term 'indigent defendant'.... [T]he test of indigency for the purpose of funding experts and experts is financial means to secure these services." (*Anderson v. Justice Court* (1979) 99 Cal3rd 398, 402-403). Petitioner met the first half of the burden – Indigency. Petitioner had been in custody since his arrest on April 20, 2010, with no means of obtaining employment to help with his legal costs. Petitioner had no assets on which to rely upon to pay legal fees and expenses. Here as in *Anderson*, Petitioner has no assets or income of his own. Therefore, Petitioner's defense counsel should have moved for a finding of indigency by the court.

The second half of the burden – showing a reasonable need for the expert, would have been meet by a "declaration of showing" by defense counsel. The Petitioner's attorney lacked the necessary expertise to defend the Petitioner against

gang enhancements, and examining and gathering specific evidence. Here Petitioner's trail counsel denied Petitioner the effort to move the court to gain access to State appointed experts that would have been mandatory with the proper showing and by doing so denied him effective assistance of counsel.

### C. Trial Counsel Did Not Have a Trauma Expert Appointed

Mr. White's refusal to have a Trauma Expert appointed denied the Petitioner the opportunity to properly demonstrate, through an adequate defense, that he was neither the driver nor the shooter. With a Trauma Expert the Petitioner would have been able to show that he was not and could not have been the driver of the crashed vehicle that was involved in the victim's death. The Trauma Expert would have been able to do so by utilizing the damage of the vehicle to opine to the kind of internal damage that the occupant of the vehicle would have sustained. Given the severe damage of the vehicle the Trauma Expert would have been able to explain the procedure first responders use to determine whether internal trauma is a concern. On scene Emergency Medical Technicians are trained to observe the damage of the vehicle when assessing possible internal damage to vehicles. According to the Department of Health Services County of Los Angeles Trauma Triage Policy patients that are occupants of a vehicle "are to be transported directly to the designated trauma center" if there is "passenger space intrusion of greater

than 12 inches into an occupied passenger space". (Exhibit D) Here a Trauma Expert would have been able to speak to the potential injuries of the occupant of the vehicle, which would have tarnished the prosecutions assertion that the Petitioner was the driver of the crashed vehicle. According to the Incident Report (Exhibit E) the Yukon, alleged to have fled the shooting scene, was estimated to be traveling at 80-90 mph just prior to the high speed collision. The speed at which the driver was traveling and the abrupt stop that such a crash would have caused would have had the potential to kill an unrestrained occupant, which leads to the assumption that the driver was wearing a seatbelt at the time of the collision. This is significant because a Trauma Expert would have been able to testify to the injuries that the occupant of the vehicle would have sustained, which would have been a crucial factor for jurors given the fact that Petitioner did not have any injuries days after the incident. As could have been attested to by his parole officer. A Trauma Expert would have been able to explain the injuries the driver would have sustained from the airbags; including trauma and abrasions to the face. Furthermore the Expert would have  explained injuries from wearing a seat belt including a seat belt sign, bruising across the body where the seatbelt was, or in the event no seatbelt was worn the possibility of death. Denial of a Trauma Expert assured the Petitioner inadequate assistance at trial.

///

### D. Trial Counsel Did Not Have a Medical Expert Appointed

In addition to trial counsel's failure to appoint a Trauma Expert, he further failed to appoint a Medical Expert would have been able to opine to the Petitioner's medical condition at the time of the incident alleged in the Petitioner's case. In February, 2010 the Petitioner required the use of a nephrostomy bag. Placement of the nephrostomy can occur at any location of the upper part of the urinary system, but the artificial opening created between the kidney and the skin is on the lower left side of the back, which is where the Petitioner's was placed at the time of the victim's death. (See Exhibit F) The nephrostomy bag is intended to drain urine directly from the kidney because a blockage keeps urine from passing from the kidneys, through the ureter and into the urinary bladder. Without another way for urine to drain, pressure would increase within the urinary system and the kidneys would sustain damaged. The placement of the Petitioner's nephrostomy would have caused complications in the event he was in an auto accident as severe as the one he is alleged to have been. He would have required immediate medical attention. Or at the very least the crash would have caused the bag to leak leaving behind his urine, which was not the case here. No evidence of Urine was found in the crashed Yukon. With such evidence the prosecution's case would have been irrefutable, but the same is true for the defense, as the lack of that evidence is just as pertinent to the Petitioner's defense. Without a Medical Expert the defendant

was not afforded the right to an adequate defense. A Medical Expert would have been able to explain the limitations the Petitioner was under at the time of the shooting and would have further been able to assert the damage that he would have sustained if he was indeed involved in a high speed collision. This is significant as the Petitioner has asserted throughout his case and all of his appeals that he did not sustain any kind of injury at the time of the victim's murder. The failure to appoint such a relevant and key expert can only suggest blatant disregard for the Petitioner's case and absolute failure to provide effective assistance of counsel.

### E. Trial Counsel Did Not Have a DNA Expert Appointed

Additionally, Mr. White continued his failure when he failed to appoint a DNA Expert. Trial counsel's failure to appoint a DNA Expert to fully investigate the DNA evidence severally prejudiced the Petitioner at trial. The failure to have a DNA Expert examine material evidence denied the Petitioner a defense against the prosecution's theory, which completely contradicted the available DNA evidence. The prosecution asserted that the Petitioner was the driver of the vehicle, but law enforcement found blood on the driver side visor, which after testing was determined to belong to the victim's uncle "Frog", Calvin Thomas. This evidence is/was germane to the Petitioner's defense, yet Mr. White ignored its relevance and allowed the Prosecutor to exclude the evidence of another suspect's blood in the vehicle without objection (Obtaining Prosecution's motion, File, and Exhibits from

Court Archives will supplement once received). The DNA evidence would have provided a strong defense, showing not only that the Petitioner was not in the vehicle, but also that there was substantial evidence that someone else was driving the vehicle. Evidence of someone else's presence in the vehicle was material because the prosecution's assertion was that the shooter fled the scene in that vehicle. Mr. White further denied the Petitioner an independent investigation into the DNA evidence by the defense not having any of the air bags tested for DNA. Had the airbags been tested they too might have shown a lack of the Petitioner's DNA and the Petitioner's assertion that he was not in the vehicle would have been solidified. The lack of Petitioner's DNA is also material because only the person in the vehicle at the time of the collision's DNA would be present on the airbags. Therefore, Mr. White's failure to appoint a DNA Expert provided an exceedingly subpar defense which severally prejudiced the Petitioner at trial.

## F. Trial Counsel Did Not Have a Crash Reconstruction Expert Appointed

Moreover, White refused to appoint a Crash Reconstruction Expert. Such an expert would have addressed the inconsistencies between the California Highway Patrol (CHP) Traffic Collision Report (Exhibit G) and the Supplemental Report of an interview with Officers R. Campos #33975 and M. Lanza #38140 (Exhibit H). The officers claim to have observed the Yukon traveling southbound on Avalon Boulevard when they began to follow and they attempted a failed traffic stop on

102nd Street. Then the Yukon speed down 102nd and turned northbound on Broadway when the officers lost visual of the vehicle due to the fact they were several blocks behind the vehicle. After they lost visual, unbeknownst to the officers, the vehicle crashed through a fence and into the remnants of a demolition sight. However the CHP Traffic Collision Report concluded that the vehicle must have been traveling northbound on Broadway (not westbound on 102st Street) and negotiated a left turn to go westbound on 102nd street when the vehicle lost control and went over the curb, collided with a bus bench and through a fence to end up crashing into the debris in the demolition sight. (See Exhibit I)This discrepancy was never investigated by Petitioner's trial counsel and was never questioned at trial. In the event that the CHP report was the true path the vehicle took this would have put doubt on the officers' testimony and account of events of the night of the shooting. Trial counsel could have used these inconsistencies to demonstrate to the jury the flaws in law enforcement's investigation and tarnished the officers' credibility. White could have also used the Crash Reconstruction Expert to evaluate the rates of speed and damage to of the vehicle in order to work with the Trauma Expert to have a better showing of the potential injuries in this specific crash. Yet White's refusal to appoint any experts caused the Petitioner to proceed to trial without adequate investigation into contradicting reports and unprepared to combat the theories presented by the prosecution.

## G. Trial Counsel Did Not Appoint a Gunshot Residue Expert

Petitioner was further failed when White failed to appoint a Gunshot Residue (GSR) Expert. The victim had several consistent particles of gunshot residue on his left hand. Although he did not have any on his right hand, the coroner could not rule out the assumption that the victim discharged a firearm. (See Exhibit J) This could have been exonerating evidence for the possibility of a self-defense claim. Although, the Petitioner's contention has always been that he was not at the crime scene and was neither the shooter nor the driver of the crashed Yukon, these evidence has the potential to establish a viable self-defense or at the bare minimum should have allowed trial counsel a viable defense of manslaughter upon a sudden quarrel *or* heat of passion," instruction, discussed later on. (*People v. Lasko* (2000) 23 Cal.4th 101, 108-109.) White should have explored the notion that the victim may have had a gun at the time of his death, because it was further asserted by Kasheena Wilborn that she called the victim just prior to his death and she heard him say "you got burners, I got burners too!" (Exhibit K, see p.2 second to last paragraph) This indicated that the victim may have had a gun at the time of the "verbal argument". What's more, the Yukon alleged to have been used as a getaway vehicle, had a bullet hole in the windshield, which is suspicious because the victim was presumed, by the coroner, to have been shot and killed at close range. Therefore the bullet hole in the vehicle is not likely to have come from the

suspect gun. A Gunshot Residue Expert would have been able to investigate the GSR on the victim's hand more thoroughly to determine the likelihood that he shot a firearm. The evidence of the victim potentially firing a firearm is major for a defense fashioned by self-defense, but here trial counsel chose not to examine the potentially material evidence that could have led to a better outcome at trial. The lack of effort and foresight by White is irregular and cause him to provide ineffective assistance of counsel to Petitioner.

### H. Trial Counsel Did Not Have a Gang Expert Appointed

Trial counsel refused to appoint a Gang Expert to refute the prosecution's theory that Petitioner killed the victim because he refused to produce a "snitch". The Prosecution produced letters from the victim to his uncle "Frog" (Exhibit L), also known as Calvin Thomas, stating that he was sorry for not contacting him sooner and that he did not believe Vaughn was "tell'en"(See Exhibit L). The Prosecution's case was based on the fact that the victim and Vaughn were as close as "brothers" and that the victim had no knowledge that Vaughn was thought to be a snitch, a major assertion by the Prosecution. Additionally, if he did know he would not have taken Vaughn into the hood, because the victim would have known the potential danger. A Gang Expert would have been able to divulge the culture of the gang life and why gang members do not protect snitches. The Gang Expert would have further revealed that if the victim really wanted to protect Vaughn he

would not have taken him into the hood, and especially not "introduce [him] to some more of the homies" (Exhibit M, see p.180 l.2-5). A Gang Expert also would have been able to explain the hierarchy of the gang. During Vaughn's interview he asserted that Frog was the highest ranking gang member present when he felt unsafe. Vaughn further explained that Frog was the victim's blood related uncle and that the victim's father was a high rank (Exhibit N, see p.171 l.16-19) making the victim "blood related" to high ranking members which would have given the victim status. A Gang Expert would have been able to explain the preference and special treatment that legacy gangsters receive from the gang and the punishment that would have been dwelt on a gang member that dare kill such a member. For these reasons the Petitioner would have had fewer motives to confront and kill the victim. Furthermore, the victim's uncle Frog would have had significant motive since the victim was blood related to him. Therefore the victim's refusal to produce Vaughn would have reflected poorly on him directly and would have been the ultimate sign of disrespect. Such disrespect would have warranted Frog to kill the victim, and given the dynamic of their relationship, would have been far more likely in comparison to the Prosecution's theory. This theory also would have been supplemented by the blood evidence that White failed to present. A Gang Expert would have further shown Frog would have been a much more likely suspect, because as the victim's blood relative he would have had much more power over

the Victim to lure him out of his home. Frog's power over the victim was apparent in the Victim's letter to Frog. With a Gang Expert the defense could have shown the letter was a plea and extension of respect, as there are dire consequences for disrespect.

The Gang Expert's testimony would have bolstered the Petitioner's defense that he was not the shooter and would have further shown that another suspect, Frog, was exponentially more likely to be the shooter. The trail counsel's failure to appoint any experts is unreasonable, but it was far more unreasonable that the defense attorney would not seek out an expert to refute the gang element which the entire case relied upon.

## I. Trial Counsel Did Not Adequately Utilize the Court Appointed Investigator

The Petitioner is entitled to "reasonably expect that before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation."( *People v. Ledesma* (1987) 43 Cal.3d 171, 215) (emphasis added). Trial strategic choices made after inadequate investigation fall far short of providing constitutionally effective assistance of "reasonable professional judgment" and would not support the limitation on investigation. (*See In re Hall* (1981) 30 Cal.3d 408, 426.)

Mr. White refused to use the court appointed investigator until the day of the trial. The failure to use the investigator severally prejudiced the Petitioner, as he was not afforded the opportunity to have all of the available/potential evidence investigated. Due to the disregard by Mr. White the Petitioner was not able to have substantial material evidence or witnesses reviewed on his behalf prior to trial. Petitioner informed White of several key facts that needed further investigation for an adequately defense.

The prosecutor theorized that Petitioner drove the Yukon from the scene of the shooting and thus was the perpetrator. Petitioner's defense was he had alibi witnesses to prove he was at a gang intervention meeting and then subsequently went to his mother's home at the time the shooting occurred. Therefore he was not driving the Yukon after the shooting, and thus could not have been the perpetrator. However, trial counsel did not talk to those alibi witnesses. (See Exhibit A PFR See 11RT 5704, 5706, 5709.)

On appeal, Petitioner contended that the deficiencies of his trial attorney deprived him of a fair trial under the Fifth, Sixth, and Fourteenth Amendments. The reviewing courts found no error, primarily because Petitioner made his claims through unsworn statements during a *Marsden* hearing and thus they were unsupported and unsupportable. (Opn.,pp. 14-18; *People v. Marsden* (1970) 2 Cal.3d 118.) The issue here is that trail counsel did not investigate the Petitioner's

alibi or attempt to contact any potential alibi witnesses, denying the Petitioner

access to sworn statements on appeal. White's decision to ignore the Petitioner's

alibi by refusal to investigate the alibi witnesses and evidence caused Petitioner to

experience great prejudice, as he was not able to present the alibi at trial or

preserve the testimony as he has been incarcerated since his arrest.

### J. Trial Counsel Rendered Constitutionally Ineffective Assistance by
### Failing to Investigate Alibi Witnesses

Further, trial counsel's decision not to investigate evidence that was

available cannot be supported as a valid tactical choice. (*In re Marquez* (1992) 1

Cal.4th 584, 606.) White made no effort to locate or investigate the Petitioner's

alibi defense. Since counsel did not ferret out facts, Petitioner cannot prove those

facts exist. Petitioner asks this Court to grant review, refuse to put its imprimatur

on such shoddy defense work, hold that counsel rendered constitutionally deficient

assistance to Petitioner's detriment under the Sixth and Fourteenth Amendments,

and thereupon reverse the judgment of conviction. (*Strickland v. Washington*

(1984) 466 U.S. 668, 687-688,694.)

Petitioner expressed a need to investigate his alibi witnesses, as Petitioner

explained the night of the shooting he attended a gang prevention meeting and

subsequently went to his mother's home, where he, his mother, and sister remained

for the remainder of the night. Then early the next morning at 5:30 a.m. he went to

Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus

the parole office for a scheduled drug test. The same day Petitioner received a call from his probation officer, Michele Armstrong, asking him to come in the next day for a sweat patch, to test his sweat for drugs. This request was unusual since Petitioner had not tested positive for drugs the entire nine months of his probation, however he complied. This allowed Ms. Armstrong to view the Petitioner's upper body without restriction of clothing, making her the perfect witness to the lack of injuries sustained by the Petitioner.

Moreover, Petitioner contends that Ms. Armstrong specifically asked the Petitioner about any limp he might have. This is relevant because the driver of the vehicle was seen limping away from the crash site by an eyewitness, but the Petitioner did not have a limp at the time of his visitations with Ms. Armstrong, which puts into question the theory he was the driver of the vehicle. The defense never received reports regarding the disrobement and inspection of the Petitioner's body. The probation officer should have generated a report of this encounter and the reasoning as to why she called him in for another extensive test when he just tested negative for drugs. White failed to subpoena or call upon Ms. Armstrong to testify on the Petitioner's behalf. Nikki Hevesy spoke with Ms. Armstrong noting that she had information that would have made the Prosecution impossible. (Exhibit O) James Allard also made contact with Ms. Armstrong and she expressed a willing to testify on behalf of the Petitioner, but was never requested to do so.

(See declaration by James Allard, Exhibit O) Her testimony would have been key to the Petitioner's defense, but White proceeded to trial without her. Here, White failed by choosing not to pursue the alibi witness and he further failed to retrieve material evidence of documentation of the Petitioner's injury inspection.

Although, Petitioner vigorously advised White that all of this evidence existed to exonerate him, White still refused to investigate any leads or potential witnesses. Even with Petitioner's explanation of his whereabouts and the mention of three named and accessible potential alibi witnesses, Mr. White failed to utilize the witnesses at trial. Though it may be arguable that Mr. White made a tactical choice to not use the Petitioner's mother and sister as alibi witnesses, there are no notes from trial counsel's interview with the mother and sister. The lack of notation leads to the assumption that he had no intention of using the material witnesses even before speaking with them. White should have put them on the stand as they were the only witnesses to account for the Petitioner's whereabouts at the time of the shooting. Additionally, the jury should have been the one to decide the credibility and possibility of inherent bias of the witnesses, since that is their duty. Likewise, White informed Petitioner that he had spoken with Michele Armstrong and she stated that she had no recollection of meeting with Petitioner, when in actuality he never spoke with her. Michele Armstrong informed Petitioner's current Investigator James Allard that she was never spoken to by Mr.

White or anyone else on behalf of the Petitioner's defense team before Allard's investigation. (Exhibit O, Allard Declaration)

White's lack of investigation not only denied Petitioner access to an alibi witness, but also denied the Petitioner of any reports that would have been generated from such an interaction with his Probation Officer. A report should have been generated, documenting the reasons for Ms. Armstrong to call the Petitioner in for a sweat test after he had just seen her for yet another negative drug test. Without due diligence from his trial counsel Petitioner was left with a subpar defense that ultimately left him with a sentence of 125 years in prison.

### K. Trial Counsel's Failure to Fully Investigate Potential Witnesses Denied Petitioner Adequate Assistance of Counsel

The right to effective assistance of counsel includes the expectation that counsel "will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation. [Citations.]" (*People v. Ledesma*, supra, 43 Cal.3d 171, 215.) "Counsel's first duty is to investigate the facts of his client's case and to research the law applicable to those facts." (Id. at 222.) Among the basic duties that must be performed by defense counsel in a criminal case is the careful investigation of "all defenses of fact and law that may be available to the defendant." (*People v. Pope, supra*, 23 Cal.3d 412, 425.)

In Petitioner's case, Mr. White refused to investigate any of the severally controversial statements made by the lead witnesses prior to Petitioner's trial. Failure to do so allowed the Prosecution to make unsubstantiated arguments against the Petitioner. Vaughn and Spraggins were the only Prosecution witnesses to events hours before the victim's death. During Vaughn's interview, he claimed the victim had no knowledge of his cooperation with law enforcement, which is relevant because the Prosecutor's case relied on the fact that the victim had no knowledge of Vaughn's "snitching", and that was the reason for him refusing to produce Vaughn for vengeance. As stated earlier, this assertion is invalid since the Prosecution obtained a letter from the victim to his Uncle Frog stating that Vaughn was not a snitch, because there was no "paperwork" against Vaughn and that letter was written three weeks prior to the victim's unfortunate demise. The letters make the Prosecution's theory illogical, yet White refused to attack even this obvious contradiction in the case.

Moreover, there is dispute regarding the last statement that the victim was heard making. Nishabia Pettaway, who lives close to the crime scene, claims that though she did not see the altercation she could clearly hear two males fighting and she believes she heard the victim's last statement and then a vehicle drive away from the scene. Ms. Pettaway told law enforcement that the last statement she heard just prior to the shooting was "I could fuck you up with a slap...Nigga, shoot

me then! I ain't scared!"(Exhibit P) and subsequently heard one shot and a vehicle

drive away. Ramona McClinton the mother of the victim's child informed law

enforcement that she was on the phone with the victim while he was killed and she

states that his last statement was "Slim if you feel that way then take off" (see

Exhibit Q). Although, in the initial notes taken by law enforcement note that Ms.

McClinton expressed that the victim's last words were "If that's how you feel,

nigger takeoff", which is significant because it would appear the name "Slim" was

not stated by the victim but rather added to the victim's last words because Ms.

McClinton was under the unfounded impression that the Petitioner was the shooter.

(Exhibit R) Again, trial counsel failed to address the contradictions between key

statements and never attacked Ms. McClinton's unfounded addition of the name

"Slim" to her account of the victim's last words. The statement that a witness heard

the Petitioner's nickname being voiced by the victim just seconds before his death

is extremely prejudicially, especially when unrefuted by the evidence showing

there was no mention of the Petitioner's nickname in the witness's original

disclosure of the victim's last words. White refused to address contradictions with

the evidence leaving the jury with only the prosecutions chosen statements and

facts to rely on. The refusal to address such unfounded prejudicial statements can

only be explained by trial counsel's ineffective assistance of counsel.

///

## L. Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Object to Prosecutorial Misconduct and by Failing to Obtain and Review Material Evidence

The *Brady* disclosure rule requires the government to provide to the Petitioner any evidence in the government's possession that may be favorable to the accused and material to guilt or punishment. *Kyles v. Whitley*, 514 U.S. 419, 450-51 (1995) (citing *Brady v. Maryland*, 527 U.S. 263, 280 (1999)). Favorable evidence includes both exculpatory evidence and evidence which may be used for impeachment. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Materiality of evidence is determined based on the reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. (*Kyles*, 514 U.S. at 433). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Bagley*, 473 U.S. at 678. Furthermore, the prosecution has the duty to disclose such evidence even in the absence of a request by the accused. (*United States v. Agurs*, (1976) 427 U.S. 97, 107.

White continued his subpar assistance of counsel by allowing the District Attorney's office to completely withhold material evidence from Petitioner. White knew material evidence existed, yet he never made a motion to compel. Under *Brady v. Maryland* the Petitioner is entitled to all evidence that would aid in his

defense. Trial Counsel had a duty to Petitioner to obtain all material evidence from the Prosecutor in order to adequately defend the Petitioner.

Here trial counsel again rendered ineffective assistance of counsel by failing to object to or bring attention to the Prosecution's *Brady* violation. Mr. White failed to compel a compact disk (CD) containing an interview with Davon Thomas. During this interview Davon was alleged to have disclosed to law enforcement that he overheard a conversation between Calvin Thomas, also known as Frog, and Johnny Ray Senor, victim's father, in which Calvin stated "they almost got me after the crash". (Obtaining File and Exhibits from Court Archives will supplement once received) This statement was and is material to the Petitioner as it incriminates another suspect, who was further implicated by other available evidence. It can also be argued that the anonymous recording (See image in Exhibit S)(Obtaining Audio, File and Exhibits from Court Archives will supplement once received) was Davon Thomas and if a voice comparison would have been done, something White failed to do, it would have been clear that Davon was attempting to alert law enforcement that they had the wrong man, Petitioner, in custody. (Obtaining File and Exhibits from Court Archives will supplement once received)Withholding this evidence severally prejudiced the Petitioner at trail because Petitioner could have asserted an affirmative defense implicating another suspect, who had more direct and indirect evidence against him then the Petitioner.

White further failed to obtain a second CD containing an interview between law enforcement and Davon Thomas in which law enforcement told Davon if he did not give up Petitioner they would charge him. Trial counsel knew these CDs existed, but he never made any attempts to procure the material evidence for review or use on behalf of the Petitioner. The existence of recorded coercive statements made by law enforcement would have had a vast impact on the jury, especially when those statements were made by a witness who had already implicated another suspect whom they had physical evidence against. Although, these CDs had invaluable evidence White allowed Petitioner to go to trial without them. It was White's duty to give the Petitioner a reasonable defense, yet he chose to go to trial ill prepared and without significant material evidence favoring the Petitioner.

Trial counsel continued to fail the Petitioner when he failed to use reports containing favorable evidence including both exculpatory evidence and evidence which may have been used for impeachment; such as reports regarding blood hounds following an unknown suspect and Dispatch Logs documenting law enforcement had a suspect in custody at 7:17a.m., the day of the shooting. These reports are relevant and material to the Petitioner's defense as both reports show that there were other suspects at the scene that could have been presented to the jury. It was alleged that the blood hounds followed a suspect (noted in Exhibit T,

obtained during Petitioner's appeal process), unknown to Petitioner, to 9930 and

9932 Avalon Boulevard. Reports regarding the search were material evidence and

they could have led to a relevant suspect that could have been presented at trial, but

trial counsel never investigated this lead and worse never reviewed any documents

reporting the investigation conducted by the K-9 and J. Schwab #34995.

Additionally, the Dispatch Logs (Exhibit U), obtained during Petitioner's appeal

process, indicate that law enforcement had an unknown person in custody, but this

person was not the Petitioner as he was not taken into custody on this matter until

April 20, 2010. To worsen the matter, White never made any attempt to obtain or

compel the reports of the other suspect's detention or have the unknown suspect

disclosed.

     The information of other culpable suspects and reports on other suspect's

detention are exculpatory evidence. White had knowledge of the existence of such

exculpatory evidence, but did nothing to obtain the evidence or defend the

Petitioner from clearly tainted and unwarranted theories that Petitioner was the

shooter and driver of the vehicle. White allowed the Prosecutor and law

enforcement to railroad the Petitioner by allowing them to narrow their

investigation to only leads involving Petitioner and by withholding favorable

material evidence, which would have led to a better outcome at trial for Petitioner.

Mr. White persisted with his ineffective assistance of counsel when he failed to object to the Prosecutor's misconduct and did not obtain a useable copy of a recording from AT Burger on Avalon Boulevard (Exhibit V) (Obtaining CD, File, and Exhibits from Court Archives will supplement once received). The surveillance video was reported to have footage showing the driver of the Yukon. Nikki Hevesy a film director provided the Petitioner's appeal attorney with a signed affidavit (Exhibit W) explaining her thirty minute long conversation with the manager of AT Burger regarding the positioning of the cameras and the content of the footage of the Yukon. The manager informed Ms. Hevesy that the video did not capture the murder because the cameras did not cover that area, but the cameras did capture footage of the Yukon fleeing the scene. The manger further explained that the footage could be enhanced to show the driver of the vehicle. The Prosecution provided Mr. White with a copy of the referenced footage, but the recording required a password. This password was not provided to the defense and thus the footage was not accessible. While Petitioner was in Pro Per he used Investigator Robert Royce to interview Jim Papantonopoulos the owner of the hamburger restaurant (Exhibit X) that recorded the footage of the driver of the Yukon. Mr. Papantonopoulos had a slight recollection of Petitioner's case, but further stated that his surveillance footage is recorded on proprietary software system which is passcode protected. He also told Investigator Royce that the he has

always used the passcode 1234 and that is the passcode he has always provided to

law enforcement when the provides them with surveillance video. He further

informed the Investigator that he never received a visit or request for the passcode

from anyone representing that they were from the Petitioner's defense team. The

footage should have been reviewed by counsel since the Petitioner's contention

was that he was not the driver of the vehicle and the withheld footage would have

shown the true driver, or at the bare minimum provided leads to exonerating

evidence. By failing to provide said password the prosecution failed to provide

material evidence to trial counsel. Albeit, it was trial counsel who exponentially

failed the Petitioner as it was his duty to adequately investigate and obtain all

available material evidence from the Prosecutor, including filing motions to

compel if necessary.

    White also did not compel the video footage from Red's Liquor, which was

the location Vaughn and Sparggins contended that they first encountered Frog and

the Petitioner. This is particularly relevant as Petitioner contends that he was not

present at the liquor store and the footage would show that he was not there. In

addition, the footage could have been presented to further impeach Vaughn, as he

was already caught in a lie when he claimed he had "snitched" on the Petitioner

and the Petitioner knew him from 2001 or 2002, which was impossible because

Petitioner was incarcerated on unrelated charges. (Exhibit Y, see p. 200 l. 6-18)

The surveillance video from Red's Liquor was material and exculpatory despite the District Attorney's notion that it was not, because it could have impeached and demolished any credibility of their key witness.  Whites continued failure in compelling such material and available evidence could not have been the actions of reasonably and competent counsel.

Petitioner asserts that his trial counsel was ineffective in failing to obtain potentially exculpatory evidence, and failing to investigate evidence, such as the inaccessible footage protected by a missing password, or the numerous *Brady* violations. This lack of action by Petitioner's trial counsel substantially affected Petitioner's defense because material evidence was not made available by the prosecution for review and because the objection was not made, the issue was not preserved for appeal. Petitioner was denied access to two CDs containing exonerating evidence from Davon Thomas, denied investigation into other suspects detained and followed directly after the shooting, and was denied video surveillance from locations that the killer was asserted to be present, which Petitioner contends he was not. The withholding of such evidence is unacceptable but the lack of action to investigate and obtain such evidence is the embodiment of ineffective assistance of counsel.

Petitioner further contends, that despite the reviewing courts assertion that no viable evidence exists to establish the existence of such evidence, there are

images showing the existence of the AT Burger surveillance disc coupled with a

statement from the establishment stating that law enforcement was provided with a

copy. (Exhibit V) There is further a minute order from the reviewing court

allowing the Petitioner, while in Pro Per, to view the footage through counsel.

(Exhibit Z)White's disregard for compelling favorable evidence on behalf of

Petitioner was a blatant disregard for the rules of evidence and the Petitioner's

Sixth and Fourteenth amendment rights.

## M. Trial Counsel Allowed the Prosecutor to Keep Out Material Evidence

## Without Objection

The Prosecution sought to exclude the evidence of Calvin Thomas' blood

that was found on the left visor's right latch. They argued that the blood

"obviously" was present prior to the victim's death and crash of the vehicle.

Although, the argument that Calvin Thomas was the driver of the vehicle, was just

as credible and should have been introduced at trial. Adequate trial counsel would

have objected and argued that the material evidence should have been allowed into

to trial, for the jury to consider the evidence, yet White allowed the evidence to be

excluded, crushing the defense that the Petitioner was not the driver of the vehicle.

(Obtaining Motion, File, and Exhibits from Court Archives will supplement once

received)

To further show counsel's ineffective assistance of counsel, the Prosecution asked Calvin Thomas, or Frog, on the stand if he had ever bled in the vehicle and he claimed that he had gotten a nose bleed in the car about two times, and although he was unsure of when his nephew was killed he could recall that he had a nose bleed three to four days prior to his death and another time a couple of weeks before that. The Prosecutor then asked "Did you ever drive the Yukon yourself" to which Frog replied "No, sir."(Exhibit AA p. 919 l. 9-13) Had the evidence of the presence of Frog's blood been allowed in to the trial the trial counsel could have further questioned Calvin Thomas as to how his blood managed to get on the driver's side visor if it was from a random nose bleed. An adequate defense attorney would have shown that Frog was a more likely suspect as his blood was present in a severe crash and the Petitioner's was not, but yet again White failed to adequately defend the Petitioner with the use of reasonable strategy and tactics presented by evidence.

## N. Petitioner's Counsel Allowed the Destruction of Material Evidence Without Repercussion and Did Not Test Other Material Evidence

Trial counsel allowed the Los Angeles Police Department (LAPD) to destroy material evidence prior to examination or testing without any recourse or objection. The LAPD destroyed the victim's clothing on February 26, 2010, just one day after the victim's death (Exhibit AB). The destruction was unwarranted

and prevented the defense from searching for other potential evidence; including

GSR showing the victim had a gun, DNA from other potential suspects he could

have struggled with, or any other unknown potential material evidence. Trial

counsel failed to bring this miscarriage of justice to the courts attention and the

jury was never presented with the erroneous and prejudice actions of the LAPD

officers involved in the Petitioner's case.

Additionally, trial counsel denied the Petitioner an independent investigation

of already tested items by the prosecution and what's worse completely untested

physical evidence that could have led to admissible evidence. Neither the

prosecution nor the defense ever tested physical evidence such as the air bag

deployed from the glove compartment, the airbag deployed from the from right

seat, or the fingernail kit and hair kit collected by the coroner. (Exhibit AC)

Testing items, for instance the fingernail kit and hair kit, could have led to physical

evidence showing that the victim was in an altercation with someone, as the

prosecutor theorized. Though the prosecution theorized that the Petitioner was the

suspect that was engaged in an argument with the victim, the evidence could have

shown that the victim had another's DNA on his person and not Petitioner.

Trial counsel should have requested the court disclose the LAPD's

misconduct in the destruction of evidence in an ongoing investigation, but he failed

to do so and the jury was never allowed to consider the mishandlings by law

enforcement. In addition, an independent investigation and test of the physical evidence items would have allowed the Petitioner to experience a more appropriate defense as his trial counsel would have based his "strategy and tactics <u>founded on adequate investigation and preparation.</u>" (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 (emphasis added)). Without such an investigation and the testing of at least the pertinent untested items, trial counsel's conduct can only be seen as ineffective.

## O. Petitioner's Counsel Unconstitutionally Objected to the Use of a Lesser Included Offence

Petitioner's trial counsel, Ron White made the strategic choice to object to the use of the lesser included offence of manslaughter and left the jury with the choice of first degree murder or a not guilty plea. A strategic choice, such as an all or nothing strategy falls far short of providing constitutionally effective assistance of "reasonable professional judgment". (*See In re Hall* (1981) 30 Cal.3d 408, 426.)

The Supreme Court of California "noted the danger of all-or-nothing verdict choices as a basis for the instructional rule" and they further explain they "have never intimated that the rule is satisfied once the jury has *some* lesser offense option, so that the court may limit its sua sponte instructions to those offenses or theories which seem strongest on the evidence, or on which the parties have openly relied. On the contrary, as we have expressly indicated, the rule seeks the most

accurate possible judgment by 'ensur[ing] that the jury will consider the *full range of possible verdicts*' included in the charge, *regardless of the parties' wishes or tactics. Wickersham, supra,* 32 Cal.3d 307, 324, 185 Cal.Rptr. 436, 650 P.2d 311, italics added. The inference is that *every* lesser included offense, or theory thereof, which is supported by the evidence, must be presented to the jury." (*People v. Breverman,* (1998) 19 Cal.4th 142; 960 P. 2d 1094; 77 CalRptr.2d 870) Therefore, counsel has a duty to present all possible charges and jury instructions in order to produce a *"full range of possible verdicts".* (*Wickersham, supra,* 32 Cal.3d 307, 324, 185 Cal.Rptr. 436, 650 P.2d 311, italics added.)

    Whereas in the present case, Petitioner's counsel chose to use the all or nothing strategy leaving the jury in a compromising choice. The prosecutor requested, based on evidence of a heated argument right before the shooting, that the trial court agree to give CALCRIM No. 570 on manslaughter as a lesser included offense to murder. (See Exhibit A PFR referencing 9RT3312.) Petitioner's attorney objected. (See Exhibit A PFR referencing 9RT3314.) Causing the Court to then reverse its own ruling because it did not think that evidence of the heated argument met the required heat of passion element, asserting there was no direct evidence of the defendant's state of mind (in that Petitioner did not testify), and the defense objected to the instruction. (See Exhibit A PFR referencing 10RT3603, 3607.) To which the prosecutor again renewed his request because

jurors could reasonably infer the requisite state of mind from the evidence (See Exhibit A PFR referencing 10RT3604.), but the trial court refused to give the instruction because of the objection of defense counsel.

A criminal defendant has a constitutional right under the Fifth, Sixth, and Fourteenth Amendments to instructions on lesser included offenses when, as here, they are supported by substantial evidence. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Lee* (1987) 43 Cal.3d 666, 678.) In addition, as Petitioner shows below, the reviewing court's analysis and holding is at odds with decisional law.

First, a trial court must instruct on a lesser included offense where the evidence supports it over the objection of the defendant. (*People v. Barton* (1995) 12 Cal.4th 186, 194.)

Second, manslaughter is a lesser included offense to murder. (*Ibid.*) Its primary element is provocation sufficient to arouse a strong passion. A person who kills as a result of provocation, that is, "upon a sudden quarrel *or* heat of passion," lacks malice and is not guilty of murder, but of the lesser offense of voluntary manslaughter. (*People v. Lasko* (2000) 23 Cal.4th 101, 108-109.) Contrary to the trial court's position, purely verbal provocation can arise from words alone. (2 *LaFave & Scott, Substantive Criminal Law* (1986) §7.10, subd.(b),pp.256-262.)

Third, there need not be direct evidence of the actor's state of mind. As the prosecutor correctly noted, the jury may infer the defendant's state of mind from the evidence. Indeed, prosecutors routinely rely on state-of-mind inferences based on the evidence when the accused does not testify. (*People v. Alexander* (2010) 49 Cal.4th 846, 907.) So do juries. (*People v. Pearson* (2013) 56 Cal.4th 393, 451 ["defendant's state of mind at the time of the offense…within the jury's exclusive province"].)

Fourth, trial counsel is supposed to be the captain of the ship. (*People v. Jackson* (2009) 45 Cal.4th 662, 668, quoting *People v. Welch* (1999) 20 Cal.4th 701, 728-729.) But counsel may not argue against his client. (*People v. Lucas* (1995) 12 Cal.4th 415,466.) Yet that is exactly what counsel did when he objected to manslaughter instructions.

Lastly, trial counsel White's objection facilitated the courts removal of a necessary lesser included offense, which can clearly be seen as ineffective assistance of counsel since even the prosecutor, who does not have a duty to the Petitioner, recognized and argued that the evidence showed a need for the lesser included offense of manslaughter.  An attorney who was ignorant of significant aspects of the facts or pertinent law such that the Petitioner was deprived of a crucial defense or the advisement of the constitutional right to a defense can only be seen as being careless and thus supports an ineffective assistance of counsel

claim. The absence of manslaughter instructions effectively reduced the prosecution's burden of proving that appellant did not act in the heat of passion following Thomas' "fighting words". The instruction would have given the jury an option between murder and manslaughter and particularly so inasmuch as the prosecutor quoted Thomas's provocative words during closing argument. (See Exhibit A PFR referencing 10RT 3655, 3657, 3674, 3675.) Further, manslaughter instructions would have generated reasonable doubt as to whether the murder was in fact first degree premeditated murder. Instructional error violates the due process clause of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution when they effectively reduce the prosecution's burden of proof necessary to find a defendant guilty. In such circumstances, reversal is required unless the prosecution demonstrates that the error was harmless beyond a reasonable doubt. (*Chapman v. California,* supra, 386 U.S. at p.24.)

In this case, the Petitioner has been prejudiced as the jury was not able to hear a lesser charge that most likely would have altered the outcome of the jury's decision in the Petitioner's favor. The outcome would have forcibly favored the Petitioner as it would have required the jurors to consider the Petitioner's intent with a more focused consideration.

Petitioner asks this Court to grant review, hold that the instructional error was irreparably prejudicial, and thereupon reverse the judgment of conviction.

-51-

## P. Petitioner Appears to Have a Viable Chance of at Least a Better Outcome

The fact that a Petitioner appears to have a viable chance at trial supports a vacated judgment.  As stated *supra*, trial counsel erred in objecting to the trial courts use of a lesser offense, failing to object to the prosecution's failure to provide material evidence, and failing to investigate Petitioner's alibi.

Furthermore, Petitioner's trial counsel failed to adequately investigate and prepare the Defendant's case resulting in the abandonment of an affirmative defense of self-defense by choosing to inadequately investigate the Petitioner's case and refusing to investigate alibi witnesses. Counsel's tactical reason to prioritize inducing the defendant to accept an all or nothing strategy was a matter of personal convenience to Counsel and not in the Petitioner's best interest.

Had trail counsel corrected any of the aforementioned errors Petitioner would have had an opportunity to attack the credibility of the prosecution's witnesses- Demond Vaughn and Mercedes Spraggins. The fact that the witnesses' stories had major flaws that could be shown by their contradicting statements brings doubt to their credibility and the truth of the stories they have told.  That doubt would only have been enhanced with the affirmative defense that Petitioner was elsewhere with the use of alibi witnesses.

Because the prosecution lacked any actual eyewitnesses and the credibility of the witnesses that accounted for the victim and Petitioner's alleged movements

hours before the shooting were arguably not credible, a proper defense could have brought reasonable doubt to the prosecution's entire case against the Petitioner.

A reasonably competent criminal defense attorney representing the Petitioner would have recognized the inconsistencies of the witnesses and sought out evidence of the Petitioner's alibi witnesses, to bring reasonable doubt to the prosecution's case. A reasonably competent attorney representing Petitioner would have recognized that the prosecutor's withholding of the password to a material video depicting the driver of the Yukon minutes after the shooting encompassed a Brady Violation and would have sought appropriate action. A reasonably competent defense attorney would not have objected to the use of a lesser offense jury instruction putting the Petitioner at a great risk that the jury would have to decide the Petitioner's fate on an all or nothing strategy, as Petitioner's counsel did.

## CONCLUSION

For the forgoing reasons, an Order to Show Cause should be issued, the writ of habeas corpus should be granted, the judgment should be vacated, and a new trail/sentencing hearing should be held.

Date: _3/18/16_

Respectfully submitted,

CHARLES HOLMES JR.
Petitioner

-54-

# CERTIFICATE OF WORD COUNT

## (Cal. Rules of Court, rule 8.360)

The text of this petition consists of 11825 words as counted by Microsoft Word word-processer program used to generate this petition.

March 18, 2016

_____

Charles Holmes, Jr.

Petitioner

# VERIFICATION

I, Charles Holmes Jr., say:

    1.  I am the petitioner herein.

    2.  I have read the forgoing Petition for Writ of Habeas Corpus, and the allegations thereof are true, except such allegations as are stated on information and belief, and, as to them, I believe them to be true.

    I declare under penalty of perjury that the forgoing is true and correct.

Executed this 18 day of MARCH , 2016 at SACRAMENT, California.


_____

Charles Holmes Jr.

# EXHIBIT COVER PAGE

A
EXHIBIT

Description of this Exhibit: Supreme Court Petition for Review

Number of pages to this Exhibit: 23 pages.

JURISDICTION: (Check only one)

[ ] Municipal Court
[ ] Superior Court
[ ] Appellate Court
[ ] State Supreme Court
[✓] United States District Court
[ ] State Circuit Court
[ ] United States Supreme Court
[ ] Grand Jury

2d Crim. No. B239704

# In the
# Supreme Court of the State of California

THE PEOPLE OF THE STATE OF CALIFORNIA,
      Plaintiff and Respondent,

vs.

CHARLES HOLMES, JR.,
      Defendant and Appellant.

---

## PETITION FOR REVIEW

After Decision by the Court of Appeal
Second Appellate District, Division Three
Superior Court  No. TA115993

---

CHARLOTTE E. COSTAN
SBN 115570
P.O. Box 3083
Burbank, California 91508
Phone: (818) 842-8932

Attorney for Defendant and Appellant,
By Appointment of the Court of Appeal

# TOPICAL INDEX

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES |  | iii |
| PETITION |  | 1 |
| ISSUES PRESENTED |  | 2 |
| REASONS WHY REVIEW IS NECESSARY |  | 2 |
| STATEMENT |  | 3 |
| FACTS AND TRIAL COURT PROCEEDINGS |  | 4 |
| COURT OF APPEAL OPINION |  | 5 |
| FACTUAL AND LEGAL BASES FOR APPELLANT'S CLAIMS |  | 6 |
| I. | THE TRIAL COURT'S INSTRUCTIONAL ERROR DEPRIVED APPELLANT OF CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS | 6 |
| II. | TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE ALIBI WITNESSES AND OTHER RELEVANT EVIDENCE | 11 |
| III. | THE TRIAL COURT DEPRIVED APPELLANT OF HIS FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL AND DUE PROCESS BY ADMITTING EVIDENCE DERIVED FROM SUGGESTIVE IDENTIFICATION PROCEDURES | 13 |
| IV. | DUE PROCESS REQUIRES THAT THE JUDGMENT BE REVERSED FOR INSUFFICIENCY OF THE EVIDENCE OR THAT THE MURDER CONVICTION BE REDUCED IN DEGREE | 15 |

i

V.   APPELLANT ASKS THIS COURT TO REVERSE
THE JUDGMENT BECAUSE CUMULATIVE
PREJUDICE GENERATED BY SERIOUS ERRORS
DEPRIVED APPELLANT OF A FAIR TRIAL AND
CONSTITUTED A MISCARRIAGE OF JUSTICE          17

CONCLUSION          18

CERTIFICATE OF WORD COUNT          19

EXHIBIT A: OPINION OF THE COURT OF APPEAL

# TABLE OF AUTHORITIES

| Cases: | Page |
|---|---|
| Chapman v. California (1967) 386 U.S. 18 | 7, 10, 14 |
| In re Edward S.  (2009) 173 Cal.App.4th 387 | 12 |
| In re Hill (2011) 198 Cal.App.4th 1008 | 12 |
| In re Marquez (1992) 1 Cal.4th 584 | 12 |
| In re Williams (1969) 1 Cal.3d 168 | 12 |
| Jackson v. Virginia (1979) 443 U.S. 307 | 15, 16 |
| Neil v. Biggers (1972) 409 U.S. 188 | 13 |
| O'Sullivan v Boerckel (1999) 526 U.S. 838 | 3 |
| People v. Alexander (2010) 49 Cal.4th 846 | 8 |
| People v. Breverman (1998) 19 Cal.4th 142 | 9 |
| People v. Flannel (1979) 25 Cal.3d 668 | 8 |
| People v. Hill (1998) 17 Cal.4th 800 | 17 |
| People v. Jackson (2009) 45 Cal.4th 662 | 8 |
| People v. Lasko (2000) 23 Cal.4th 101 | 7 |
| People v. Lee (1987) 43 Cal.3d 666 | 7 |
| People v. Lucas (1995) 12 Cal.4th 415 | 9 |
| People v. Marsden (1970) 2 Cal.3d 118 | 11 |

iii

People v. Raley (1992) 2 Cal.4th 870                                    16

People v. Pearson (2013) 56 Cal.4th 393                                  8

People v. Welch (1999) 20 Cal.4th 701                                    9

Strickland v. Washington (1984) 466 U.S. 668                            12


**Constitutions, Statutes, Rules of Court:**

U.S. Const.                                                        *passim*

Cal. Rules of Court, rule 8.360                                         18

Cal. Rules of Court, rule 8.500                                          3


**Other Authorities:**

LaFave & Scott, Substantive Criminal Law (1986)                          7

iv

No. B239704

# In the
# Supreme Court of the State of California

PEOPLE OF THE STATE OF CALIFORNIA,
>   Plaintiff and Respondent,

v.

CHARLES HOLMES, JR.,
>   Defendant and Appellant.

---

TO THE HONORABLE CHIEF JUSTICE AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Defendant and appellant, Charles Holmes, Jr., hereby petitions this Court for review and reversal of the unpublished decision of the Court of Appeal, Second Appellate District, Division Three, in Case No. B239704, filed May 24, 2013.  The reviewing court affirmed the judgment of conviction and sentence of 125 years to life.  A copy of the opinion of the Court of Appeal is attached to this Petition as Exhibit A.

1

effective assistance of counsel and due process of law . (Cal. Rules of Court, rule 8.500.)

## STATEMENT

The following issues present no grounds for review under rule 8.500 of the Rules of Court, and the arguments presented are to exhaust state remedies for federal habeas corpus purposes. (*O'Sullivan v. Boerckel* (1999) 526 U.S. 838.)

3. Whether the trial court erred and deprived appellant of his Fourteenth Amendment right to due process by admitting identification evidence based on an unduly suggestive show-up consisting of a single photograph of appellant who the authorities believed to be the suspect.

4. Whether Fourteenth Amendment due process requires that the judgment of conviction be reversed or reduced in degree for want of sufficient credible evidence of willful, deliberate, and premeditated murder.

5. Whether the judgment should be reversed because cumulative prejudice generated by multiple errors in a close case deprived appellant of his Fourteenth Amendment right to a fair trial and due process.

3

## FACTS AND TRIAL COURT PROCEEDINGS

The facts and trial court proceedings are summarized in the Court of Appeal's opinion at pages 2-11. In brief, this was a gang case in which Johnny Ray Thomas was shot and killed in the early morning hours of February 25, 2010. The prosecutor theorized that the target victim was a snitch, Demond Vaughn, and when decedent Thomas refused to deliver Vaughn to appellant for gang vengeance, a heated argument ensued and appellant shot Thomas. (10RT 3609.) Appellant's defense was that he was not the shooter, and not the driver of the vehicle that sped away from the scene of the homicide. Rather, he was at a gang intervention meeting. However, trial counsel neither investigated appellant's alibi nor called his alibi witnesses. (See 11RT 5707, 5709.)

The jury convicted appellant of first degree murder as charged in count 1, dissuading a witness as charged in count 2, and found true all the special allegations. (2CT 448-451, 453-455; 10RT 3902-3094.) The court found true the allegation that appellant suffered two prior strikes within the meaning of the three strikes law. (2CT 522; 11RT 5720.) The court sentenced appellant under the three strikes law to an aggregate term of 125 years to life. (Opn., p. 2.)

4

## COURT OF APPEAL OPINION

1.  The trial court did not err in rejecting the request of the *prosecutor* for voluntary manslaughter instructions based on a sudden quarrel or heat of passion and trial counsel did not render ineffective assistance by objecting to the instruction.  (Opn., pp. 11-14.)

2.  Defense counsel did not render ineffective assistance by failing to call appellant's probation officer, or failing to investigate potential exculpatory witnesses or evidence, or failing to locate, investigate and call alibi witnesses.[1]  (Opn., pp. 14-18.)

3.  The single-photo showup was not suggestive.  (Opn., pp. 18-20.)

4.  There was sufficient evidence that appellant committed first degree murder.  (Opn., pp. 20.)

5.  No cumulative prejudicial error occurred.  (Opn., pp. 20, fn. 10.)

_____

[1]By separate order, the reviewing court denied appellant's petition for habeas corpus which was consolidated with this appeal.  (Opn., p. 2, fn. 1.)

5

## FACTUAL AND LEGAL BASES FOR APPELLANT'S CLAIMS

### I.

### THE TRIAL COURT'S INSTRUCTIONAL ERROR DEPRIVED APPELLANT OF CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS

At first, at the prosecutor's request based on evidence of a heated argument right before the shooting, the trial court agreed to give CALCRIM No. 570 on manslaughter as a lesser included offense to murder. (9RT 3312.) Appellant and his attorney objected. (9RT 3314.) The court then reversed its ruling because it did not think that evidence of the heated argument met the required heat of passion element, there was no direct evidence of the defendant's state of mind (in that appellant did not testify), and the defense objected to the instruction. (10RT 3603, 3607.) Again the prosecutor renewed his request because jurors could reasonably infer the requisite state of mind from the evidence. (10RT 3604.) The trial court refused to give the instruction.

The Court of Appeal found no error because (1) defense counsel objected to the instruction, (2) provocation was "purely verbal" (3) there was no direct evidence that appellant's judgment was *actually* obscured or that he acted with the requisite state of mind, (4) defense counsel did not render ineffective assistance in objecting to the instruction, and (5) the jury rendered a murder verdict on evidence that supported a conviction for premeditated murder. (Opn., pp. 11-14.)

6

Appellant respectfully disagrees because a criminal defendant has a constitutional right under the Fifth, Sixth, and Fourteenth Amendments to instructions on lesser included offenses when, as here, they are supported by substantial evidence. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Lee* (1987) 43 Cal.3d 666, 676.) In addition, as appellant shows below, the reviewing court's analysis and holding is at odds with decisional law.

First, a trial court must instruct on a lesser included offense where the evidence supports it over the objection of the defendant. (*People v. Barton* (1995) 12 Cal.4th 186, 194.)

Second, manslaughter is a lesser included offense to murder. (*Ibid.*) Its primary element is provocation sufficient to arouse a strong passion. A person who kills as a result of provocation, that is, "upon a sudden quarrel *or* heat of passion," lacks malice and is not guilty of murder, but of the lesser offense of voluntary manslaughter. (*People v. Lasko* (2000) 23 Cal.4th 101, 108-109.) Contrary to the Court of Appeal's position that purely verbal provocation is insufficient as a matter of law, provocation can arise from words alone. (2 LaFave & Scott, Substantive Criminal Law (1986) §7.10, subd. (b), pp. 256-262.)

7

Third, there need not be direct evidence of the actor's state of mind. As the prosecutor correctly noted, the jury may infer the defendant's state of mind from the evidence. Indeed, prosecutors routinely rely on state-of-mind inferences based on the evidence when the accused does not testify. (*People v. Alexander* (2010) 49 Cal.4th 846, 907.) So do juries. (*People v. Pearson* (2013) 56 Cal.4th 393, 451 [" defendant's state of mind at the time of the offense . . . within the jury's exclusive province"].)

Here, testimony revealed that victim Thomas and the shooter were engaged in a heated argument. Thomas raised his voice and taunted the shooter in an agitated, angry, baiting voice: "Nigga Slim, if you feel like that, then take off." (6RT 1934:11-12; 6RT 1953.) Thomas said, "I'll fuck you up with a slap." He added, "I ain't scared," and a taunting, "Well, shoot me then." Gunshots followed. (6RT 1611-1612, 1616, 1620, 1935.) There was ample evidence of provocation. Any doubts the trial court had should have been resolved in favor of appellant. (*People v. Flannel* (1979) 25 Cal.3d 668, 685.)

Fourth, trial counsel is supposed to be the captain of the ship. (*People v. Jackson* (2009) 45 Cal.4th 662, 668, quoting *People v. Welch*

8

(1999) 20 Cal.4th 701, 728-729.) But counsel may not argue against his client. (*People v. Lucas* (1995) 12 Cal.4th 415, 446.) Yet that is exactly what counsel did when he objected to manslaughter instructions.

Finally, the reviewing court relied on the fact that the jury convicted appellant of first degree murder and concluded that there was overwhelming evidence to support that verdict. Therefore, even if the trial court erred, reversal was not required. (Opn., p. 13.) But, there was also ample evidence of manslaughter. What defense counsel did was force the jury to make an all-or-nothing decision, which no jury should be forced to do. (*People v. Breverman* (1998) 19 Cal.4th 142, 155.)

The absence of manslaughter instructions effectively reduced the prosecution's burden of proving that appellant did not act in the heat of passion following Thomas' fighting words. The instruction would have given the jury an option between murder and manslaughter – and particularly so inasmuch as the prosecutor quoted Thomas's provocative words during closing argument. (10RT 3655, 3657, 3674, 3675.) Further, manslaughter instructions would have generated reasonable doubt as to whether the murder was in fact first degree premeditated murder.

9

Instructional errors violate the due process clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution when they effectively reduce the prosecution's burden of proof necessary to find a defendant guilty. In such circumstances, reversal is required unless the prosecution demonstrates that the error was harmless beyond a reasonable doubt. (*Chapman v. California, supra,* 386 U.S. at p. 24.)

Appellant asks this Court to grant review, hold that the instructional error was irreparably prejudicial, and thereupon reverse the judgment of conviction.

## II.

## TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEF-FECTIVE ASSISTANCE BY FAILING TO INVESTIGATE ALIBI WITNESSES AND OTHER RELEVANT EVIDENCE

The prosecutor theorized that appellant drove the Yukon from the scene of the shooting and thus was the perpetrator.  Appellant's defense was he had alibi witnesses to prove he was at a gang intervention meeting when the shooting went down, he was not driving the Yukon at the time of the shooting, and thus could not have been the perpetrator.  However, trial counsel did not talk to those alibi witnesses.  (See 11RT 5704, 5706, 5709.) Further, counsel did not pursue missing discovery relevant to the defense.  (11RT 4210-4216.)

On appeal, appellant contended that the deficiencies of his trial attorney deprived him of a fair trial under the Fifth, Sixth, and Fourteenth Amendments. The Court of Appeal found no error, primarily because appellant made his claims through unsworn statements during a *Marsden* hearing and thus they were unsupported and unsupportable. (Opn., pp. 14-18; *People v. Marsden* (1970) 2 Cal.3d 118.). Notably, however, the reviewing court accepted the prosecutor's unsworn words as truth. (Opn., p. 16.)

11

Appellant disagrees. Trial counsel has a duty to investigate carefully all defenses of fact and law that may be available to his client. (*In re Williams* (1969) 1 Cal.3d 168, 175.) "California case law makes clear that counsel has an *obligation to investigate all possible defenses and should not select a defense strategy without first carrying out an adequate investigation.*" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1017, quoting *In re Edward S.* (2009) 173 Cal.App.4th 387, 407, emphasis in *Hill.*) Trial counsel's decision not to find out what evidence is out there cannot be supported as a valid tactical choice. (*In re Marquez* (1992) 1 Cal.4th 584, 606.)

Counsel in the instant case made no effort to complete discovery or contact alibi witnesses and never so much as claimed that he did. Because he did nothing, appellant faces a conundrum: Because counsel did not ferret out facts, appellant cannot prove those facts exist. Appellant asks this Court to grant review, refuse to put its imprimatur on such shoddy defense work, hold that counsel rendered constitutionally deficient assistance to appellant's detriment under the Sixth and Fourteenth Amendments, and thereupon reverse the judgment of conviction. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

12

## III.

## THE TRIAL COURT DEPRIVED APPELLANT OF HIS FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL AND DUE PROCESS BY ADMITTING EVIDENCE DERIVED FROM SUGGESTIVE IDENTIFICATION PROCEDURES

On appeal, appellant claimed that the trial court erred prejudicially by overruling his objection to identifications made where the police showed two witnesses only a single DMV photo as opposed to a sixpack because the out-of-court identifications based on a single photograph were unduly suggestive. (4RT 1001.) Admission of the one-photo identifications and in-court identifications resulting from that process, deprived appellant of due process because the procedure used was so unduly suggestive as to give rise to a substantial likelihood of mistaken identification. (*Neil v. Biggers* (1972) 409 U.S. 188, 196-98.)

The Court of Appeal disagreed, holding that even if the one-photo identification procedure was unduly suggestive, the pretrial identifications by two witnesses and their in-court identifications were reliable under the circumstances. (Opn., pp. 17-20.)

13

Again, appellant disagrees.  First of all, the record plainly reveals that, although snitch Vaughn identified appellant as the same "Slim" about whom he gave information in 2003, he was forced to concede that was impossible because appellant was in federal custody in 2003. (5RT 1403, 1408.) Even the lead investigator admitted that the basis for Vaughn's identification of appellant was false.  (9RT 3023.)

Second, it is not true that witness Spraggins knew appellant from the past.  It is equally untrue that she "spent a good deal of time" with appellant on the night of the shooting.  She paid little heed to appellant, concentrating instead on her laptop computer.  (6RT 1853, 1885.).

Denial of appellant's motion to exclude the eyewitness identifications derived from a single photo violated his federal and state constitutional rights.  The People did not, and cannot, establish beyond a reasonable doubt that the error was harmless.  Therefore, the judgment of conviction should be reversed.  (*Chapman v. California, supra,* 386 U.S. at p. 24.)  Appellant asks this Court to do so.

14

## IV.

## DUE PROCESS REQUIRES THAT THE JUDGMENT BE REVERSED FOR INSUFFICIENCY OF THE EVIDENCE OR THE MURDER CONVICTION BE REDUCED IN DEGREE

On appeal, appellant contended that due process requires either reversal or a reduction on count 1 to second degree murder or voluntary manslaughter because there is insufficient credible evidence to establish beyond a reasonable doubt that appellant was the shooter or, if the jury disagreed, that he killed with deliberation and premeditation. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.)

The reviewing court pretty much dismissed the claim out of hand, stating that there was overwhelming evidence that appellant murdered Thomas and did so in a "willful, deliberate, and premeditated gang-related shooting." (Opn, p. 20.)

The prejudicial use of a single photo line up, the absence of any witnesses to the shooting, or any other direct evidence to prove that appellant was the shooter, resulted in a conviction based on speculation and surmise. Speculation is not enough to affirm a conviction and send

15

the accused to prison for 125 years. (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

The conviction of a criminal defendant on the basis of evidence that is legally insufficient to sustain the verdict beyond a reasonable doubt violates the due process principles embodied in the Fourteenth Amendment. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319.) The judgment should be reversed or reduced in degree. Appellant asks this Court to do one or the other.

16

## V.

## APPELLANT ASKS THIS COURT TO REVERSE THE JUDGMENT BECAUSE CUMULATIVE PREJUDICE GENERATED BY SERIOUS ERRORS DEPRIVED APPELLANT OF A FAIR TRIAL AND CONSTITUTED A MISCARRIAGE OF JUSTICE

In his Court of Appeal, appellant explained in detail why the case was close, and how prejudice from multiple prejudicial errors deprived him of his Fourteenth Amendment right to a fair trial and due process. (*People v. Hill* (1998) 17 Cal.4th 800, 844.)

The reviewing court dismissed appellant's claim in a one-sentence footnote. (Opn., p. 20, fn. 10.)

However, in light of the Court's tacit admission that the trial court committed instructional error, and may have admitted unduly suggestive identifications, albeit deeming both non-prejudicial errors, in combination with trial counsel's serious dereliction of duty, this was a close case where the combination of prejudicial errors deprived appellant of Fourteenth Amendment due process. Once more, appellant seeks this Court's review and reversal of the judgment.

17

## CONCLUSION

For all of the reasons given herein, and in the briefs submitted to the Court of Appeal, appellant Holmes asks this Court to grant review and thereupon reverse the judgment of conviction or reduce the degree of conviction to second degree murder or manslaughter.

June 10, 2013                           Respectfully submitted,

                                        CHARLOTTE E. COSTAN

                                        By _Charlotte E. Costan_
                                        Charlotte E. Costan
                                        Attorney for Defendant and Appellant,
                                        By Appointment of the Court of Appeal

18

## CERTIFICATE OF WORD COUNT
### (Cal. Rules of Court, rule 8.360)

The text of this petition consists of 2814 words as counted by the Corel Word Perfect Version X5 word-processing program used to generate this brief.

June 10, 2013

*Charlotte E. Costan*

Charlotte E. Costan
Appellate Counsel

# EXHIBIT COVER PAGE

B

EXHIBIT

Description of this Exhibit: State OF California Second Appellate District
Habeas corpus Order

Number of pages to this Exhibit: ___1___ pages.

JURISDICTION:   (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury