Lonnie L. McDowell (SBN 261214)
McDowell & Associates, Attorneys
117 Winston Street, Suite 406
Los Angeles, California 90013
Telephone: 213-401-2324
Facsimile: 213-401-2324
Email: Lonnie@McDowellDefense.com

Counsel for Petitioner
**CHARLES HOLMES, JR.**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **CHARLES HOLMES JR,** | ) | **Case No.: CV16-311-MWF (KS)** |
| Petitioner, | ) | |
| | ) | |
| | ) | **PETITIONER'S OBJECTION TO** |
| vs. | ) | **MAGISTRATE JUDGE'S REPORT AND** |
| | ) | **RECOMMENDATION (COA) AND** |
| **Jeff Macomber, (Warden (A)), et. al.;** | ) | **MEMORANDUM OF POINTS AND** |
| Respondents. | ) | **AUTHORITIES** |
| | ) | |
| | ) | **Hon. Karen L. Stevenson** |
| | ) | |
| _____ | ) | **United States Magistrate Judge** |

TO THE HONORABLE, KAREN L. STEVENSON, AND JEFF MACOMBER,

WARDEN AT THE CALIFORNIA STATE PRISON—SACRAMENTO:

Petitioner, CHARLES HOLMES, Jr. offers this objection to the Magistrate Judge's Report and

Recommendation to grant Respondent's Motion to Dismiss, and Deny and Dismiss the Petition

with prejudice. The Magistrate Judge's Report and Recommendation provides that Petitioner is

not entitled to sufficient equitable tolling pursuant to Section 2244(d)(1). As a result, Petitioner's

one-year limitations period expired on December 3, 2015, a mere nine days after the California

1

Supreme Court's denial, and thus rendering his Federal Habeas Petition, which was constructively filed on January 8, 2016, as untimely by more than one month.

 Petitioner argues that based on the totality of the circumstances and in the interests of justice he is entitled to sufficient equitable tolling to render his petition timely on the basis that he had been diligently pursuing his rights during the one-year limitations period and through no fault of his own, extraordinary circumstances stood in his way, preventing him from filing his Petition. This objection is based on the attached memorandum of points and authorities in support of Petitioner's objection to the Magistrate Judge's Report and Recommendation to grant Respondent's Motion to Dismiss, attached declaration in support of this objection, and all the documents already filed in the above-entitled matter.

Dated: August 31, 2016

                 Respectfully,

                 _____/s/ Lonnie L. McDowell_____
                 Lonnie L. McDowell
                 Attorney for Petitioner
                 CHARLES HOLMES, JR

2

## MEMORANDUM OF POINTS AND AUTHORITIES

The Magistrate Judge's Report and Recommendation provides that neither of the two extraordinary circumstances Petitioner cites— (1) that Petitioner was prevented by the CDCR from filing a CDCR 22 form prior to him presenting his completed Habeas Petition to the Folsom State Prison Legal Department in order to obtain his trust account statement, and (2) the antibiotics and pain medications Petitioner was taking throughout 2014 and 2015 following surgery for his kidney disease severely impaired his overall ability to function—entitles him to equitable tolling. The CDCR's delay in processing Petitioner's CDCR 22 form until January 12, 2016—over 40 days after Petitioner filed and submitted his completed Habeas Petition and his completed CDCR 22 form on November 30, 2015—cannot in the interests of justice be misappropriated to establish that it was Petitioner's ignorance or confusion of the law or his "lack of diligence" that caused delay. Additionally, Petitioner's kidney disease is a documented ongoing medical condition that severely impaired his basic ability to function and prevented Petitioner from filing at an earlier date. Petitioner underscores that both these circumstances were impediments beyond his control. Petitioner prays that Respondent's Motion to Dismiss be denied, and that he be allowed to proceed with the pending action on the merits.

**I.    NEITHER PETITIONER'S IGNORANCE OF THE PROCEDURES IN OBTAINING IFP STATUS NOR A LACK OF DILIGENCE ON HIS PART CAUSED THE DELAY IN FILING HIS HABEAS PETITION**

In its Tentative Recommendation, the Court cites several cases where equitable tolling was denied due to a Petitioner's ignorance of the procedures in obtaining IFP status - namely *Morales v. McEwan; Ford v. Pliler; Waldron-Ramsey v. Pacholke*; and *Raspberry v. Garcia* – all of which generally hold that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance." (Court's Tentative Recommendation [hereinafter "TR" 8:24-25).

3

However, it is not Petitioner's lack of sophistication that prevented him from filing his Habeas Petition prior to the December 3, 2015 deadline[1], but the policies and procedures of the California Department of Corrections at Folsom which caused his technically late filing.

The Court states in its tentative recommendation that it was "Petitioner's extreme delay in researching how to proceed IFP," that caused the untimely filing. (TR 9:2-3.) The Court states "[h]ad Petitioner pursued his rights diligently, he would have done one of the following: [1] identified the documents he needed to proceed IFP before November 30, 2015 and requested them in a more timely fashion, [2] saved sufficient funds to pay the $5.00 filing fee; [3] contacted an individual outside the prison who could pay the filing fee …, or [4] learned that he could file his habeas petition without a certified trust account statement. (TR 9:3-8).

### A. PETITIONER WAS DILIGENT IN RESEARCHING IFP PROCEDURES

As the court stated in *Holland v. Florida,* (2010) 560 U.S. 631) "[t]he diligence required for equitable tolling is "**Reasonable Diligence**", not "**Maximum Feasible Diligence**". (*Holland*, at 2565.) (emphasis added). Underscoring what Petitioner stated in his "Opposition to Dismiss," he reasonably and diligently pursued all available avenues advised to him by the Legal Office at Folsom State Prison, including when he filed and submitted his Habeas Petition and a CDCR 22 form on November 30, 2015.

As Petitioner stated in his Opposition, prior to receiving the decision of the California Supreme Court on November 27, 2015, Petitioner had completed his Habeas Petition except for the information he needed contained in the denial. (Opposition [hereinafter "Opp."] 5:1-3) During the almost year that his State post-conviction motions were working their way through the courts, Petitioner had met with his counselor and the staff at the Legal Office regarding the procedures he needed to follow. The Legal Office advised petitioner that he needed to first complete his Habeas Petition prior to submitting a CDCR 22 form. Folsom State Prison's procedure is that an inmate must present his

---

[1] Petitioner contends that the actual deadline was December 6, 2015, 9 days after receiving the notice of denial on November 27, 2015.

completed motion and then, to ensure that he could obtain a trust account statement to complete his application and proceed *in forma pauperis,* he must then submit the CDCR 22 form. Petitioner filled out the CDCR 22 form and provided the Legal Office with his completed Petition on November 30, 2015. (Opp. 5:6-7) As Petitioner points out in his Opposition, the Legal Office did not file the CDCR 22 from "or send Petitioner's Petition to the litigation office until January 12, 2016." (Opp. 6:5-6). This was beyond Petitioner's control, as he was unable to obtain his IFP certificate prior to having his completed Habeas Petition and he could not complete his Habeas Petition until he received the denial by the California Supreme Court.

It was Folsom State Prison's procedure of not processing the CDCR 22 form for Petitioner's IFP certificate until he presented them with a completed Habeas Petition that caused the delay and not Petitioner's ignorance of the procedures. It was a State created impediment which created an "extraordinary circumstance" which entitles Petitioner to equitable tolling.

### B. PETITIONER'S LIMITED FUNDS SHOULD NOT BE HELD AGAINST PETITIONER

The Court in its Tentative Recommendation indicates that Petitioner could have "saved sufficient funds to pay the $5.00 filing fee." (TR 9:3-8). However, that is not the reality for many inmates. If it was, there would be no need for IFP certificates. Petitioner does not have the luxury to have people on the outside that can contribute to his "book account" on a regular basis. Holding Petitioner's lack of financial resources against him would essentially amount to justice for only those who can afford it. While Petitioner is sure this is not the position of the Court, Petitioner asks that the Court not deny him equitable tolling because of his lack of ability to save sufficient funds to file his Petition.

### C. PETITIONER DID ATTEMPT TO CONTACT AN INDIVIDUAL OUTSIDE THE PRISON TO FILE THE HABEAS PETITION

As Petitioner points out in his Opposition, he diligently checked in with the legal office regarding the filing of his Petition. However, Petitioner did not simply just sit around waiting, he attempted to find someone on the outside who could file his Petition. As stated in his

Opposition, Petitioner contacted Attorney C. Hamm, who agreed to file the Petition. (Opp. 5:18). Unfortunately, Petitioner was unable to find someone until later in December, 2015 when he mailed his Petition. (Opp. 5:19-20). Attorney Hamm, did not file the Petition with the court until January 8, 2015. Petitioner did not just wait for the Folsom State Prison Legal Office, he actively attempted to find an alternative method of filing, using the limited means available to him.

      Petitioner also contacted people on the outside to see if someone could pay the filing fee. Per Petitioner's Opposition, he was finally able to find someone, Nikki Hevesy, who agreed to go down to the Court and pay the filing fee. (Opp 5:22-24) Again, Petitioner was not just waiting around, resting on the fact he gave the Legal Office his Petitioner, but he was actively engaged in attempting to get his Petition filed.

      As Petitioner's actions show, he was not just waiting for the Legal Office to complete his paperwork, he was actively, diligently using the limited resources available to him to get his Petition filed.  As the court in *Holland*, supra, 560 U.S. 631, states "[t]he diligence required for equitable tolling is "**Reasonable Diligence**", not "**Maximum Feasible Diligence.**" (Emphasis added).  In the present situation, Petitioner went above and beyond "reasonable diligence" given the limited resources available to him and therefore, the Court should find that Petitioner is entitled to sufficient equitable tolling to render his Petition timely filed.

      **D.  PETITIONER REASONABLY RELIED ON THE INFORMATION PROVIDED BY FOLSOM STATE PRISON'S LEGAL OFFICE, WHICH CONSTITUTES STATE ACTION WHICH PREVENTED HIM FROM FILING HIS HABEAS PETITION.**

      In *Holland v. Florida*, 130 S.Ct. 2549, the Court held that a state prisoner is entitled to equitable tolling of AEDPA's one-year statute of limitations on petitions for federal habeas relief if he shows that he had been diligently pursuing his rights and that some extraordinary circumstance stood in his way and prevented timely filing of the petition. Furthermore, in

6

*Wyzykowski v. Department of Corrections*, 226 F.3d 1213, the Court held that in the event of illegal state action preventing petitioner from filing, AEDPA's one-year limitation period for habeas petitions does not begin until after the state impediment is removed.

      The Court in its Tentative Recommendation states, "[Petitioner should have] learned that he could file his habeas petition without a certified trust account statement. (TR 9:3-8). However, this is contrary to what he was told by the Folsom State Prison Legal Office. Prior to receiving word from the California State Supreme Court that his State Petition had been denied, he contacted his Counselor, Mr. Jensen, and the Prison Legal Office. Both informed Petitioner that he needed to have a completed Habeas Petition prior to beginning the paperwork needed to file his Petition, namely the CDCR 22 from.  This is the Prison's Policy and Procedure.  Given Petitioner's limited access to legal materials, and most Petitioners' limited knowledge of legal research, it is reasonable for Petitioner to rely upon the advice and counsel of his Counselor and Prison Legal Office. Petitioner reasonably relied upon the Legal Offices assertion that they would complete his application and file his Habeas.

      Since Folsom provided the information that Petitioner relied upon, any error should be held against the State and not Petitioner.  Given the State action which created the impediment to Petitioner in this case, the Court should find that Petitioner is entitled to sufficient equitable tolling to render his Petition timely filed.

    **II.**    **STATE ACTION CONSTITUTES AN EXTRAORDINARY CIRCUMSTANCE ENTITLING PETITIONER TO EQUITABLE TOLLING**

      The Court in its Tentative Recommendation cites *Morales v. McEwan*, stating that a petitioner's ignorance of the procedures for obtaining IFP status is not an extraordinary circumstance warranting equitable tolling. (NO. EDCV 11-667-GHK (MAN) 2012 WL 632405,

at 9) (TR 8:10-12). Additionally, in *Gutierrez v. California*, 411 Fed. Appx. 952, 953 (9th Cir.), the Court held that petitioner's confusion about the proper address of the state court of appeal did not constitute an extraordinary circumstance warranting equitable tolling.

Unlike in *Morales* and *Gutierrez*, Petitioner in the present action was not confused about the legal advice and course of action that he was given but instead reasonably relied upon the information provided in filing his petition. Counselor Jensen, Petitioner's counselor at Folsom Prison, advised Petitioner that he needed to wait to hear back from the California Supreme Court before he could begin the IFP process. Counselor Jensen advised Petitioner that he needed to have his Habeas Petition completed before they would process the CDCR's 22 form. Petitioner had his completed Habeas Petition ready on November 30, 2015 having just received notice of the California Supreme Court's denial. Petitioner could not have been more diligent.

The Court also cites *Miles v. Prunty*, 187 F.3d 1104 (9th Cir. 1999), stating that *Miles* is distinguishable from Petitioner's case in that *Miles* was able to file his petition within seventeen days after his counsel informed him of the looming deadline but that Petitioner had years to prepare to file his IFP application within the limitations period but failed to do so because of his own delay. (TR 10:14-17). Petitioner respectfully disagrees with the Court's analysis.

First, Petitioner did not have the benefit of counsel as Miles did to inform him of the looming deadline, or alternative procedures which could have been employed to file his Habeas Petition by the December 6, 2016 deadline. Petitioner only had the Folsom Legal Office and his Counselor's advice. Advice which turned out not to be totally accurate. In this case, there was no alternative for Petitioner other than to rely on his Counselor and the Legal Office's advisements at Folsom Prison.

Second, Petitioner went beyond "reasonable diligence" in attempting to file his Habeas Petition. He did not just wait until he received word from the California Supreme Court, but had his Petition ready to file except for the information needed from the denial to complete his Petition. It was the State's action at Folsom which prevented him from obtaining his IFP certificate prior to receiving word from the Supreme Court by requiring Petitioners' to have their Habeas completed before they will accept and file the CDCR form 22.

There is no evidence that Petitioner's pursuit of the filing of his petition failed to be reasonable and diligent given the information that he was able to access and that he was actually aware of. Petitioner, unlike *Miles*, did not have the luxury of counsel to inform him of deadlines or to inform him of alternative methods of filing. Petitioner's only advice came from the Legal Office and Counselors at Folsom State Prison.

In *Eaves v. Burris*, 529 F.Supp.2d 470, the Court held that one rare situation in which equitable tolling is demanded by sound legal principles as well as in the interests of justice is where the plaintiff was in some extraordinary way prevented from asserting her rights. In the present case, the Court should find that he was prevented from asserting his rights because of the misinformation provided by the State. Therefore, in the interests of justice the Court should find sufficient equitable tolling to allow Petitioner's Petition to be heard on the merits.

### III. THE COURT'S TENTATIVE RECOMMENDATION PROVIDES TWO REASONS EXTRAORDINARY CIRCUMSTANCE SHOULD BE FOUND THUS PROVIDING EQUITABLE TOLLING.

#### A. THE CDCR UNREASONABLY DELAYED FILING

The Court cites in its footnote No. 2 that in *Morales*, supra, the "Central District noted that it takes the California State Prison Trust Office about a week to process certification requests." (TR 9: fn 2). Yet it took Folsom's Legal Office *over 40 days*, until January 12, 2016,

9

to actually process Petitioner's CDCR 22 form and file his Petition. Given that Petitioner's actual deadline for filing his Habeas was December 6, and not December 3, 2015, according to *Morales*, there was adequate time for Folsom to process Petitioner's IFP and mail his Petition before the deadline. It was the CDCR's failure to process until January 12, 2016, that alone has resulted in Petitioner facing substantial delay and irreparable harm in the present action - a delay that was totally beyond the control of Petitioner. The CDCR's delay is egregious misconduct that amounts to State action thus is sufficient to warrant equitable tolling. Therefore, the Court should find that at least 40 days of equitably tolling applies and should allow Petitioner's Habeas to proceed on the merits.

### IV. THE PRISON MAILBOX RULE ESTABLISHES PETITIONER FILED AT THE TIME HE DELIVERED PETITION TO PRISON AUTHORITIES

Petitioner provided the Folsom Legal Office with his completed Habeas Petition along with his CDCR 22 from on November 30, 2015, therein the Court should deem his Petition filed as of that date. (Opp. 6:5-6). (see also, Opp. Exhibit 2 CDCR Request for Service dated 11/30/15).

In *Houston v. Lack*, 487 U.S. 266, 276 (1988), the Court held that a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court. The Court underscored that prisoners, unlike other litigants, cannot take the same steps to monitor the processing of their documents to ensure that the court clerk receives and stamps them before the deadline. *Id*. at 270-71. The Court further noted that prison officials may have an incentive to delay prisoners' court filing and that prisoners would have a difficult time proving that the officials did so. *Id*. at 271.

In the present matter, the Legal Office and Counselor Jensen at Folsom Prison advised Petitioner that he was required to have his Habeas Petition submitted to the Legal Office before

10

needing to provide a CDCR 22 form to obtain a trust account statement to complete his application to proceed *in forma pauperis*. Petitioner completed and submitted his Habeas Petition on November 30, 2015, as evidenced in the prison logs at Folsom Prison. ( see Opp. Exhibit 1, previously filed). The CDCR has not contested this fact. After Petitioner delivered his petition to the Legal Office at Folsom Prison, his control over the filing of his petition with the court clerk ceased. The fact that there was an over 40-day delay, until January 12, 2016, was beyond Petitioner's control. As such, Petitioner's petition was deemed filed at the time he handed it over to the Legal Office with the expectation that it would be forwarded to the court clerk without delay.

The Court, in its Tentative Recommendation cited *Huizar*. (TR 3:fn1) In *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir.2001), the Court further held in reliance on *Houston v. Lack*, *supra*, that a prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.

In the present matter, Petitioner was reasonably diligent. He followed up with the Legal Office after submitting his petition and before the deadline on December 6, 2015. Petitioner also followed up with the Legal Office on December 6, 2015. Having received no update on the status of his petition other than being told that the Legal Office was taking care of it, Petitioner tried to contact an attorney who could mail a copy of his petition to the court to make sure that the court would in fact receive it. Petitioner was unable to find an attorney to find an attorney who would mail out his petition until he was able to speak with Nikki Hevesy who got the petition to the court and paid the filing fees in January 2016.

11

In *Huizar*, prisoner litigant waited an additional twenty-one months after having received no response two months after he sent in his petition. The Court held that this was *not* an unusually long time to wait for a court's decision. In total, Huizer waited over twenty-eight months for a response on whether the Court had received his petition yet was still found to have exercised reasonable diligence. In this case, there is no such twenty-eight month delay, which was deemed in *Huizar* to be a reasonable period of time. Petitioner immediately tried to find someone external who could assist him in filing his petition after he followed up with the Legal Office after submitting on November 30, 2015 and again on December 3, 2015, the actual deadline date. Petitioner was at a loss for what further actions he could take to ensure the filing of his petition other than to continue contacting as many external people as possible until he was able to find someone who would take his petition to court and pay the filing fees.

As such, Petitioner did exercise reasonable diligence in following up on his petition after submitting his petition to the Legal Office at Folsom Prison.

### V.     INTERVAL BETWEEN DENIAL BY THE CALIFORNIA SUPREME COURT AND THE FILING OF FEDERAL HABEAS SHOULD BE TOLLED UNDER *BIGGS* AND *STEWART*

In *Biggs v. Terhune*, 339 F.3d 1045, 1046 (9th Cir. 2003), the Court provided that under Section 2244(d)(2), the limitations period is suspended not only in the time period in which a properly filed application for post-conviction relief is pending in state court but also "during the intervals between the denial of a petition by one court and the filing of a new petition at the next level, if there is not undue delay." *See also Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir.), cert. granted, 122 S. Ct. 393 (2001) (holding the AEDPA's statute of limitations is tolled for the entire time prisoner is pursuing state court remedies and gaps between denial of one state petition and filing of the next are not counted against prisoner's year). However, in *Stewart v. Cate*, 757

F.3d 929, 935 (9th Cir. 2014), the Court clarified that the time between the denial of a petition in a lower California court and the filing of a subsequent petition in the next higher court does not toll the statute of limitations pursuant to Section 2244(d)(2) if the latter petition is not timely filed. The Court provided that it must be determined whether the filing of the request for state-court appellate review was made within what California would consider a "reasonable" length of time to file an application for review, and that in light of "scant guidance", the Supreme Court has instructed federal courts to apply a thirty-to-sixty-day benchmark.

While *Biggs*, *Saffold*, and *Stewart* deal with the time interval between State post-conviction petitions, the interests of justice require that the same principle apply in Petitioner's case. Petitioner's Petition was filed on January 8, 2016, only thirty-one days after the December 6, 2015 deadline. This thirty-one-day delay is well within, and on the lower end of, the thirty-to-sixty-day benchmark that the Supreme Court has instructed be applied. It is also important to note that in *Stewart*, the Court also provided that under appropriate circumstances, this thirty-to-sixty-day benchmark for California's reasonable time requirement may be exceeded in the interests of justice. It would be against the interests of justice if State petitions were afforded reasonable tolling between the denial and filing of a petition but not between the State and Federal filings. In the present case the Court should find adequate equitable tolling and allow Petitioner's Habeas to proceed on the merits.

  **VI.**  **PETITIONER'S MEDICAL CONDITION PROVIDES AT LEAST 129 DAYS OF EQUITABLE TOLLING THUS PETITIONER'S HABEAS SHOULD BE DEEMED TIMELY.**

During the time Petitioner was being treated for his ongoing kidney disease he was deprived access to his legal materials preventing timely filing. As a result of his kidney disease, Petitioner has suffered recurrent urinary tract infections, and severe hydroureteronephrosis.

13

These conditions are considered chronic congenital abnormalities of the urinary tract for which Petitioner has suffered increasing amounts of pain and fatigue throughout treatment. As Petitioner noted in his Opposition this has been an ongoing medical condition. (Opp. 7:1-22). Petitioner's complex urologic history has resulted in him having to have multiple surgeries on his left side, first when he was twelve-years-old and again in 2011. (See Exhibit 1).[2] On October 17, 2013, Petitioner had surgery again at USC consisting of a psoas hitch with re-implant of the left stent that was placed for hydronephrosis and retrograde stricture. (See Exhibit 2). On February 13, 2104, the stent was removed after tolerating clamping trails, but the pain endured before surgery almost immediately returned. (Id.) On March 20, 2014, the stent was replaced. (Id.). On April 15, 2015, Petitioner went in for further evaluation and it was determined that there were no real improvements in his symptoms and that he was having recurrent infections since surgery despite taking antibiotics. (Id.) On May 9, 2014, Petitioner was admitted to Loma Linda University Health System for ureter obstruction, swollen kidney, and left flank pain (See Exhibit 3). His condition at this point was still determined to be "severe/chronic" with Petitioner continuing to endure massive amount of pain. (Id.) Petitioner was prescribed over a period of time, Morphine, Methadone, Codeine, Amoxicillin, and Doxazosin. (Sees Exhibit 4). And while no specific notation as to side effects or complications arising from these medications is noted in Petitioner's medical records, they are all powerful pain medications that would be expected to impair Petitioner's ability to prepare a Habeas Petition.

    Due to his medical condition, Petitioner, at various points and for substantial periods of time throughout the one-year limitations period, was frequently in transit for medical diagnosis and treatment – from USC to Loma Linda, to San Francisco Medical Center. During all these periods of time, whether just in transit of as an inpatient, Petitioner was without access to his legal materials or any legal resources for which he could have been working on his Habeas Petition. Inadequate access to

---

[2] Petitioner provided only limited medical records in his Opposition due to availability. The medical records attached as exhibits herein were only obtained by Petitioner's Counsel on August 28, 2016. They consist of

legal resources amounts to deprivation of legal materials that constitutes an external impediment for which equitable tolling has been granted and the one-year statute of limitations period suspended until petitioner had access to legal materials and resources. *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013(9th Cir. 2009*); Roy v. Lampert*, 465 F.3d 964, 973-75 (9th Cir. 2006); *Whalem/Hunt v. Early*, 233 F.3d 11446, 1148 (9th Cir. 2000))(en banc)(per curium); *Nino v. Galaza*, 183 F.3d 1003. 1006-07 (9th Cir. 1999).

      In *Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir.2002), the Court emphasized that there are cases in which a pro se prisoner litigant who had access to his legal files on the days before his AEDPA limitation period expired was so disabled by earlier events such that timely filing was impossible. In *Lott*, the court held that a temporary transfer which lasted 360 days resulted in disabling petitioner from timely filing. However, the Court further underscored on the issue of "impossibility" that timely filing may in some circumstances involve the confluence of numerous factors beyond the prisoner's control that have resulted in petitioner being barred from adequate, meaningful, and affective access to the court.

      In the present matter, the CDCR's failure to process in a timely manner is coupled with Petitioner being denied access to his legal materials due to his severe medical condition and his resulting status in prison for substantial periods of time during the one-year limitations period. Petitioner's kidney disease was a serious, ongoing condition of total impairment that caused him to file his original appeal leaving only nine days remaining in which to file his Federal Habeas. Had Petitioner not suffered from kidney disease he would have been physically able to file sooner. Petitioner's medical condition was not a circumstance of his own making that resulted in a delay making him ineligible for equitable tolling. On the contrary, per *Lott*, the Petitioner's medical condition and resulting depravation of access to his legal materials was what prevented Petitioner from filing timely, thus the issue of equitable tolling should be resolved in Petitioner's favor.

---

approximately 3000 pages of records, a sampling of which are attached.

15

## VII. THE TOTALITY OF THE CIRCUMSTANCES AND SOUND LEGAL PRINCIPLES WARRANT EQUITABLE TOLLING IN THE INTERESTS OF JUSTICE

Equitable tolling of the one-year limitations period is appropriate in the interests of justice when principles of equity would make the rigid application of a limitation period unfair based on sound legal principles. *See Hayman v. Pennsylvania*, E.D.Pa.2009, 624 F.Supp.2d 378; *Eaves v. Burris*, D.Del.2008, 529 F.Supp.2d 470. In *Lott*, supra, the Court opined that rather than let procedural uncertainties unreasonably eliminate a constitutional claim, when the issue of grave difficulty becomes literal impossibility, **this should be resolved in petitioner's favor.** (emphasis added).

At least two cases in the 9th Circuit that are akin to the circumstances present in the matter at hand have applied equitable tolling. In *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), Petitioner was a pro se prisoner who timely requested that prison officials draw on his trust account and prepare a check for his filing fee. The court equitable tolled the AEDPA limitations period because prison officials delayed the request, causing petitioner to miss the filing deadline. Additionally, in *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir.1998), equitable tolling was applied because petitioner's alleged mental incompetency was treated as "an extraordinary circumstance beyond the prisoner's control," which rendered him unable to assist in the preparation of his habeas petition.

In the present case, as discussed above, it was external forces rather than Petitioner's lack of diligence that resulted in the CDCR's 40 day delay after Petitioner reasonably relied on the advice of Counselor Jensen and the Legal Office at Folsom Prison. The CDCR's unreasonable and unjustified delay has caused Petitioner substantial harm in the treatment of his cause of action before this court. Also, although unlike *Calderon,* Petitioner in this matter was pro se at

the time of filing his initial state habeas petition, Petitioner's severe medical condition of kidney disease, documented above, does constitute an extraordinary circumstance beyond his control that resulted in being barred access to his legal materials and resources for substantial periods throughout the limitations period. Petitioner's kidney disease and the complications resulting therefrom directly impacted his ability to perform daily life activities let alone prepare a habeas petition on his own had he actually been given access to his legal materials. Petitioner's medical status in prison completely barred him from having ready and immediate access to his legal materials. Petitioner did everything within his knowledge after exercising reasonably diligent means to obtain legal advice on the AEDPA's one-year limitation period. Petitioner's diligent pursuit of his rights is further evidenced by the fact that his delay in filing was only thirty-one-days. In light of the gravity of all the circumstances—the CDCR's 40-day delay and Petitioner's ongoing impairment from kidney disease surgeries and treatment—Petitioner's thirty-one-day delay is minimal and on the lower end of the thirty-to-sixty-day benchmark that the Supreme Court outlined. As such, given the particular compounded circumstances in this case, principles of equity heavily weight in favor of granting equitable tolling in the interests of justice for extraordinary circumstances that arose that were beyond Petitioner's control.

Lastly, in *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir.), citing to *Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003), and *Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007), the Court opined both that equitable tolling is typically granted when litigants are unable to file timely petitions as a result of external circumstances beyond their direct control and denied in cases where a litigant's own mistake clearly contributed to his predicament.

The present case presents the compounding of circumstances that were out of

17

Petitioner's control. Petitioner's kidney disease was a severe and impairing condition for which he was transported to hospitals throughout the state for treatment and care with no subsiding of his condition and pain levels. This was a circumstance that directly impacted Petitioner's status and being deprived of his legal materials and the ability to conduct legal research. Additionally, Petitioner submitted his habeas petition and the CDCR failed to file it with the court for over 40 days. This was also a circumstance that was out of his control and which he clearly sought to remedy by continuously following up with the Legal Office as to the status of his petition and seeking external people who could file his petition directly with the court on his behalf.

## **CONCLUSION**

For all of the above foregoing reasons, Petitioner has established extraordinary circumstances preventing timely filing. As such, in the interests of justice Petitioner's Habeas Petition should be entitled to equitable tolling and Respondent's Motion to Dismiss denied.

Dated: _____

Respectfully,

_____/s/ Lonnie McDowell_
Lonnie L. McDowell
Attorney for Petitioner
CHARLES HOLMES, JR